**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MEYERS DIVISION**

| | | |
|---|---|---|
| MICHAEL TUCKER, Individually & AZUREE'D TUCKER, Individually & on behalf of M.T., a Minor Child<br>    *Plaintiffs,*<br><br>V.<br><br><br>THE SCHOOL DISTRICT OF LEE COUNTY, FLORIDA; THE SCHOOL BOARD OF LEE COUNTY, FLORIDA; STEPHAN CATO; KYLE BURCHFIELD; ALEX CARCIOPPOLO; ROBERT HINSON; CHRISTOPHER CHAPELL; ROBERT BUTZ; and CHRISTOPHER S. BERNIER, Ph.D.<br>    *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. <u>2:24-cv-142</u><br><br><br><span style="color:red">JURY DEMANDED</span> |

## <u>PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs MICHAEL TUCKER, Individually, and AZUREE'D TUCKER, Individually and on behalf of their minor son, M.T., and file their Original Complaint against Defendants, THE SCHOOL DISTRICT OF LEE COUNTY, FLORIDA; THE SCHOOL BOARD OF LEE COUNTY, FLORIDA; STEPHAN CATO; KYLE BURCHFIELD; ALEX CARCIOPPOLO; ROBERT HINSON; and CHRISTOPHER S. BERNIER, Ph.D. In support thereof, Plaintiffs show the Court the following:

## <u>INTRODUCTION</u>

1.    The principle of nondiscrimination is a cornerstone of justice, fairness, and equality within public educational institutions. Unfortunately, the public schools within The School District of Lee County, Florida (the "School District") violate this principle time and time again. This

1

lawsuit underscores a disturbing narrative of bias and exclusion within the School District's Fort Myers High School and its sports program, where M.T., an African American student-athlete, encountered numerous obstacles solely based on his race. M.T. experienced and suffered from unequal treatment in access to both educational resources and opportunities, from discriminatory practices in team selection, coaching decisions, and disciplinary action as well as unlawful retaliation against M.T. and his parents for asserting their rights. M.T. was unlawfully targeted and discriminated against, including but not limited to being peppered with racial slurs, threats, and derogatory remarks, by school officials, administration and others the School District could control, where the School District both knew of, allowed and through inaction tolerated a discriminatory and racially hostile educational environment to exist to the detriment of M.T.'s legal rights. M.T.'s experiences paint a troubling picture of institutionalized race-based discrimination within Fort Myers High School's athletic department and the School District.

2.      The racial discrimination at issue began on February 14, 2023, when M.T.'s baseball coach, Alex Carcioppolo, sent a disturbing text message to Fort Myers High School's ("FMHS") baseball players and coaches that read: "Happy Valentine's Day niggas." One of the students complained about the racial slur, and, from there, M.T. began to encounter a barrage of harassment and racially discriminatory conduct that was perpetrated, tolerated, and condoned by Defendants.

3.      The ramifications of the discrimination and retaliation endured by young M.T. and his parents, in his formative years, extend far beyond the realm of sports, permeating his entire educational experience at the School District and FMHS and perpetuating harmful stereotypes that undermine the principles mandated by Federal and State Law against race-based discrimination and retaliation in public education. The race-based harassment, discrimination and retaliation also

2

had very real economic consequences for M.T., who, as a star player whose father was a professional player for Major League Baseball, was foreclosed of his chance of playing for college recruiters (present and attending the game) when the racial discrimination culminated in a "walkout" during a game, leaving M.T.—the only African American student-athlete on the team— standing by himself on an empty field. Swift and decisive action is necessary to rectify the injustices inflicted upon M.T. by Defendants, and there is a grave need to institute comprehensive reforms that address systemic racism and discrimination within the FMHS sports program, and in The School District of Lee County generally.

4.      This lawsuit is not only a quest for justice for M.T., but is also a clarion call for accountability and reform within all Lee County public educational institutions to uphold the fundamental tenets of fairness, dignity, and equality for all individuals, regardless of race or ethnicity. As the legal proceedings unfold, the spotlight shines brightly on The School District of Lee County, Florida and The School Board of Lee County, Florida, challenging their commitment to eradicating discrimination and fostering an environment where every student can thrive and excel, unimpeded by the shackles of illegal discrimination, racism, prejudice and bias.

### **JURISDICTION**

5.      This case arises under the United States Constitution and the laws of the United States, including the Equal Educational Opportunities Act of 1974; 20 U.S.C. § 1703; Title VI of the Civil Rights Act of 1964; 42 U.S.C. § 2000d; 42 U.S.C. § 1983; the Florida Educational Equity Act; and Article IX of the Florida Constitution. The court has subject matter jurisdiction under 28 U.S.C. §§ 1331(a), 1341, 2201, and 2202, and 20 U.S.C. §§ 1706, 1708. The court may exercise supplemental jurisdiction over plaintiff state law claims under the Florida Educational Equity Act, Fla. Stat. §§ 1000. 05 and Florida Admin. Code Ann. R. 6A-19.001. See 28 U.S.C. § 1367(a).

**VENUE**

6.      Venue is proper pursuant to 28 U. S. C. § 1391(B)(2) because "a substantial part of the event or emissions giving rise to the claims occurred" in this District.

**PARTIES**

7.      Plaintiffs, Michael Tucker and Azuee'D Tucker, bring suit individually and on behalf of their minor son, M.T..  Plaintiffs reside within the FMHS attendance zone in Lee County, Florida.

8.      Defendant The School District of Lee County, Florida ("School District") is a public school system and local educational agency under Federal law, authorized to do, and at all relevant times was doing business in Fort Myers, Lee County, Florida, and maintains its agents, apparent agents, employees, servants, borrowed servants, and representatives in this County. The School District has acted under color of state law at all times referenced in this complete within the meaning of 42 U.S.C. §1983. The School District of Lee County, Florida may be served by serving Dr. Christopher S. Brenner at Lee County Public Education Center, 2855 Colonial Blvd., Fort Myers, FL 33966.

9.      The School Board of Lee County, Florida, ("School Board") is responsible for directing, operating, controlling, and supervising all free public schools in Lee County, Florida. *See* Fla. Stat. §§ 1001.32-33 and 1001.40-42.  The School Board is responsible for the operation of schools within The School District of Lee County including FMHS. *Id.* § 1001.42(4). The School Board is the contracting agent on behalf of the School District and is subject to suit. *Id.* §§ 1001.41(4), 1001.30. The School Board has acted under color of state law at all times referenced in this complete within the meaning of 42 U.S.C. §1983. Under Florida law, final policymaking authority for a school district is vested in the School Board." *K.M. v. School Bd. of Lee Cty., Fla.,*

4

150 Fed. App'x. 953, 957 (11th Cir. 2005).  The School Board of Lee County, Florida may be served by process by serving Dr. Christopher S. Brenner may at Lee County Public Education Center, 2855 Colonial Blvd., Fort Myers, FL 33966.

10.     Defendant DR. CHRISTOPHER S. BERNIER is the Superintendent of The School District of Lee County and all of its public schools, including FMHS, and is the secretary and executive officer of The Lee County School Board. *See* Fla. Stat. §§ 1001.32(3), 1001.33. He is a United States Citizen and resident of the state of Florida.  Defendant Bernier, as Superintendent, is responsible for the administration and management of the schools.  *Id.*; *see also id.* §§ 1001.49, 1001.51. He is charged with managing, administering and overseeing the operation of schools, overseeing instruction, classes and extracurriculars, and educational services as are needed to provide equal educational opportunities for all students of the School District, including M.T. *Id.* § 1001.51(6). Defendant Bernier is also charged with ensuring that all federal and state laws and rules of the State Board of Education are properly observed, and School Board policies are enforced and followed. *Id.* § 1001.51(14).  He is ultimately responsible for supervising all school administrators, faculty, and staff, including FMHS coaches, in the School District. *Id.* § 1003.26. Defendant Bernier acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. He is sued in his official capacity. Dr. Christopher S. Brenner may be served with process by serving him at Lee County Public Education Center, 2855 Colonial Blvd., Fort Myers, FL 33966.

11.     Defendant STEPHAN CATO was the FMHS Athletic Director. He is a United States Citizen and resident of the state of Florida.  He was responsible for oversight and management of Athletics at FMHS.  He was charged with implementing operation of FMHS athletics, and other athletic services related thereto, as are needed to provide equal educational

opportunities for all students in the School District, including M.T. Defendant Cato was also charged with ensuring that all laws and rules of the State Board of Education are properly observed, and School Board policies are enforced and followed. Defendant Cato acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. He is sued in his official capacity. Stephan Cato may be served at Fort Myers High School, 2635 Cortez Blvd., Fort Myers, FL 33901.

12. Defendant KYLE BURCHFIELD was the FMHS Head Coach for the baseball team. He is a United States Citizen and resident of the state of Florida. He was responsible for athletic administration and management of the FMHS baseball team. He was charged with implementing operation of the baseball team, and other athletic services related thereto, as are needed to provide equal educational opportunities for all children in the School District, including M.T. Defendant Burchfield was also charged with ensuring that all laws and rules of the State Board of Education are properly observed and School Board policies are enforced and followed. Defendant Burchfield acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. He is sued in his official capacity. Kyle Burchfield may be served at Fort Myers High School, 2635 Cortez Blvd., Fort Myers, FL 33901.

13. Defendant CHRISTOPHER CHAPELL was the FMHS JV Head Coach and Assistant Varsity Coach for the baseball team. He is a United States Citizen and resident of the state of Florida. He was responsible for athletic administration and management of the FMHS JV baseball team and assisting in these capacities for the Varsity team. He was charged with implementing operation of the baseball team, and other athletic services related thereto, as are needed to provide equal educational opportunities for all children in the School District, including M.T. Defendant Chappell was also charged with ensuring that all laws and rules of the State Board

of Education are properly observed and School Board policies are enforced and followed. Defendant Chappell acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. He is sued in his official capacity. Christopher Chapell may be served at Fort Myers High School, 2635 Cortez Blvd., Fort Myers, FL 33901.

14. Defendant ROBERT BUTZ is the Principal for FMHS. He is a United States Citizen and resident of the state of Florida. Defendant Butz was responsible for the administration and management of FMHS and is charged with managing, administering and overseeing the operation of the school, overseeing instruction, classes and extracurriculars, and educational services as are needed to provide equal educational opportunities for all students of FMHS, including M.T. *Id.* § 1001.51(6). Defendant Butz is also charged with ensuring that all federal and state laws and rules of the State Board of Education are properly observed, and school policies are enforced and followed. Defendant Butz acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. He is sued in his official capacity. Robert Butz may be served at Fort Myers High School, 2635 Cortez Blvd., Fort Myers, FL 33901.

15. Defendant Robert Hinson was an FMHS teacher and Coach for the baseball team. He is a United States Citizen and resident of the state of Florida. He was responsible for assisting in athletic administration and management of the FMHS baseball team. He was charged with assisting operation of the baseball team, and other athletic services related thereto, as are needed to provide equal educational opportunities for all children in the School District, including M.T. Defendant Hinson was also charged with ensuring that all laws and rules of the State Board of Education are properly observed and School Board policies are enforced and followed. Defendant Hinson acted under color of state law at all times referenced in this complaint within the meaning

7

of 42 U.S.C. § 1983. He is sued in his official capacity.  Robert Hinson may be served at Fort Myers High School, 2635 Cortez Blvd., Fort Myers, FL 33901.

16.     Defendant Alex Carcioppolo was the FMHS Assistant Coach for the baseball team. He is a United States Citizen and resident of the state of Florida. He was responsible for assisting in athletic administration and management of the FMHS baseball team.  He was charged with assisting operation of the baseball team, and other athletic services related thereto, as are needed to provide equal educational opportunities for all children in the School District. Defendant Carcioppolo was also charged with ensuring that all laws and rules of the State Board of Education are properly observed and School Board policies are enforced and followed. Defendant Carcioppolo acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. He is sued in his official capacity.  Alex Carcioppolo may be served at Fort Myers High School, 2635 Cortez Blvd., Fort Myers, FL 33901.

**FACTUAL BACKGROUND**

17.     M.T., an African American student-athlete, was subject to race-based discrimination while participating as a student athlete and player on the FMHS baseball team and was exposed to rampant race-based harassment during the school day and at school activities within the School District's control and jurisdiction.  The harassment began on February 14, 2023, when Defendant Alex Carcioppolo sent a text message to the baseball team and coaching staff that read: "Happy Valentine's Day niggas." A copy of that text message appears below:

8



18.     After being alerted to the racially inappropriate message, Defendant Carcioppolo deleted the message, claiming that he sent it to the wrong group. After the incident, friction ensued within the team, with some students siding with Defendant Carcioppolo, and outwardly claiming that M.T., one of only two African American players on the team, was responsible for backlash received by Defendant Carcioppolo because of his offensive and inappropriate use of the derogatory racial slur.

19.     During a meeting the following day held by the Athletic Director, coaches, and school assistant principals, nearly half of the team reported that they regularly heard racial slurs being used among team members, and that the racially hostile environment created thereby was with the knowledge and condonement of the Defendants. In fact, students directly reported the use

9

of derogatory racial slurs lodged against him to Defendants Carcioppolo and Burchfield, but were told to stop "acting like a sissy" for being "bothered" by the use of the slurs; M.T. was a participant in these meetings where the coaches suppressed the complaints of racial slurs. He then experienced retaliation from Defendants and others for speaking up and voicing concerns of discrimination.

20. The Defendants held a series of meetings with players after the February 14th incident, but refused to allow discussion of Defendant Carcioppolo's treatment or directly address the harassment, hostility and racism experienced by M.T. and T.R. after the incident as well as a scourge of retaliatory efforts against M.T. Prior to, during the time of, and immediately after these meetings, there were a series of hostile confrontations and contentious incidents, both during team activities and during the school day, between players and Defendants, resulting in parent reports to the school seeking resolution. After the Feb. 14th incident, Defendants increased unlawful attempts to discriminate and also to retaliate against M.T. and his parents and force M.T. off the team, including enforcing a new Code of Conduct that appeared targeted only to him and disciplining only him for perceived violations of the new-fangled Code of Conduct that was merely pretext for the School District's discrimination and retaliation.

21. The Code was inconsistently and unfairly implemented against M.T. in retaliation for the false belief that Defendant Carcioppolo was deprived of coaching because of M.T. The new rules were not provided in the same way as the original rules which required parent and student review, as well as a returned signature of receipt. In attempting to enforce these new rules targeting M.T., the consequences issued by the coaching staff to M.T. were considerably more severe than previously provided for the same infraction. The disparate application of the new rules was the result of racial bias, discrimination, and retaliation towards the African American students, including M.T., and his parents. The new rules were inconsistently applied largely along the line

10

of family division—with more infractions and stiffer consequences being faced by the African American students, including M.T.

22.     The disparity continued in all aspects of athletic and educational life. M.T. was socially ostracized at games, team dinners, and school events, all under the jurisdiction of the School District—and students and staff would make race-based negative comments or comments that were retaliatory in nature to M.T./. The Defendants also allowed other parents to directly provide financial benefits to the baseball program, rather than working through the authorized Athletic Booster Club, which operates under School District policy and requires rules, as a way to obfuscate the discrimination.

23.     Further, M.T.'s parents were targeted for speaking out about the discrimination and prejudice. When M.T.'s parents informed Defendants of the unfair treatment and the widespread and accepted use of the N-word by players and coaches to M.T., they were ostracized at parents' events and intentionally left off communications from Defendants. Defendants deliberately failed to include M.T.'s parents in educational decisions regarding their son as a means of retaliation for speaking out about race-based discrimination, violating the Parents' Bill of Rights under Florida Statute 1014.04. Other parents, with Defendants' knowledge and blessing, began to sponsor events for the team privately rather than through the Authorized Athletic Booster Club as a way to avoid including them in events and activities. This was an organized effort of the Defendants to ostracize M.T. and his parents and to obfuscate the discrimination.

24.     The incidents, issues, and complaints continued, when, on April 5, 2023, Principal Robert Butz removed Defendant Burchfield from his coaching duties. The following day there was a baseball game scheduled between FMHS and Estero High School. This game welcomed college scouts and recruiters who would watch and evaluate the players, including M.T. for future

11

scholarships and university recruitment activities. Unbeknownst to M.T., the Defendants, FMHS coaches and staff, FMHS students, and other FMHS parents had planned to do a "walk out" in response to the termination. Defendants knew that the walkout was going to occur as far back as March 9, 2023, but did nothing to prevent it or to reschedule the college scouts and recruiters. Defendant Cato arrived at Terry Park on April 6, 2023, where the game was to be played. When it was M.T.'s turn at bat, a group of FMHS players who had been taunting M.T. began to walk out of the dugout, leaving M.T. and the other African American student on the field in embarrassment and public humiliation. As the players walked off the field, other parents, staff, and administrators cheered them on and fist-bumped them, including Defendants Hinson and Chappell. Other School District faculty and staff, including Defendant Hinson and Chappell, even joined the players walking out, exposing M.T. to disparagement and public humiliation that was an intentional act of extreme and egregious discrimination and retaliation that shocks the conscience. As they walked out, Defendant Hinson reported to another: "You need to be a man and take a stand with us." Kids and parents began to yell at one another with racial slurs being thrown around. One student yelled at Plaintiffs that "it isn't about skin color," and that Mrs. Tucker was taunted by a parent saying, "oh, my skin."

25.     After the walkout, all the remaining games of the season were cancelled, foreclosing M.T.'s chance to play ball that year, develop his statistics for recruitment opportunities, have opportunities to play in front of college scouts and recruiters, and enhance his playing skills.

26.     Sadly, FMHS has a long history associated with resistance to integration, which included a riot at the school in 1969 and long-standing and widely known ongoing racial tensions. Even in investigating the text message in question, the School District astonishingly attempted to justify the use of the racial slur, indicating that "[t]here are differing perceptions over the use of

12

stylized version of the N-word, "nigga," depending on the persons' backgrounds and ethnic/racial identities." *See* Ex. A.  The School District went on to note that "This has normalized the usage and led to differing perceptions of who may use the word, situations in which it may be used, etc." Even the treatment of the conduct after the fact demonstrates the Defendants tolerance for racist comments and evidence of institutionally-condoned discrimination and harassment.  The School District and School Board have condoned this discrimination, acting under color of law, and allowed it to permeate and fester throughout the entire FMHS community. It has reached a point of rot and stink that were exposed through the above-described events, but the Defendants' actions were inadequate to meet their legal duties owed to M.T. and his parents and others exposed to the blatant acts of discrimination and retaliation.

## **CAUSES OF ACTION**

### **Count I: Equal Educational Opportunities Act of 1974 ("EEOA")**

27.    Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated.

28.    Defendants are bound by the provisions of the EEOA, 20 U.S.C. § 1703.

29.    Section 1703 of the EEOA states in part:

No state shall deny equal educational opportunity to an individual on account of his or her  race color sex or national origin by—

(a) the deliberate segregation by an education agency of students on the basis of race, color, or national origin among or within schools; [and]

(b) the failure of an education agency which has formally practiced such deliberate segregation to take affirmative steps, consistent with part 4 of this subchapter, to remove the vestiges of a dual school system[.]

20  U.S.CC. § 1703(a), (b).

13

30.     Through their actions and inactions, including the act of excluding these students from equal opportunities at public school, defendants have denied Plaintiffs equal educational opportunity an account of their race by deliberately segregating them from their peers because of their race.

31.     By virtue of creating a different athletic system for African Americans, like M.T., and the white students, Defendants effectively segregated these students based upon their race. Defendants denied Plaintiffs equal educational opportunities on account of their race by failing to take appropriate action to overcome race-based barriers that impede these students' equal participation in Defendants' public-school programs.

32.     Defendants' failure to take appropriate action includes but is not limited to:

- A permissive environment in which the use of derogatory racial terms is intentionally tolerated and condoned;

- Inconsistent discipline with more infractions and harsher punishments being meted out to African American students, like M.T., on the basis of the color of their skin;

- Intentionally allowing rampant threats, hostility, and harassment to occur against African American students, like M.T.;

- Intentionally exposing African American students, like M.T. to known harassment, embarrassment, and disparagement by other students, faculty and staff;

- Retaliatory application of discipline and revisions of the Codes of Conduct unfairly targeted African American students, like M.T.;

- Reduced playing time and cancelled seasons on the basis of racism and discrimination and in retaliation for engaging in protected activities; and

- Condoned and participated in horrific retaliatory acts against M.T. and his parents by publicly humiliating and shaming M.T. and his parents, and condoning and/or encouraging others to do the same.

14

33.     As a result of Defendants' discriminatory and retaliatory conduct, Defendants denied M.T. a free, non-discriminatory public education, the opportunity to learn the skills and subject matter set forth in Florida standards, access to other activities and programs available to students enrolled in public schools, and there are full learning and earning potential. By failing to take appropriate action to overcome race-based harassment and discrimination that impeded M.T.'s equal participation in Defendants' instructional programs, Defendants denied M.T. an equal education in violation of the EEOA and state law on account of his race, and in retaliation against M.T. and his parents for engaging in protected activities.

34.     Defendants' conduct violates the rights of Plaintiffs under the EEOA.

35.     As a result of Defendants' actions and inactions, Plaintiffs have suffered and will continue to suffer irreparable harm, which includes but is not limited to the loss of education and educational opportunities provided to all through the athletic program, and inability to overcome racial barriers, and diminished educational and future employment opportunities.

36.     Plaintiffs request declaratory and injunctive relief to remedy Defendants ongoing violations of these rights.

**Count II: Title VI of the Civil Rights Act of 1964**

37.     Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated.

38.     Title VI Provides that "no person in the United States shall, on the ground of race color or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under, or any program receiving federal funding." 42 U.S.C. §2000d.

39.     As recipients of federal funding, The School District and The School Board, are prohibited from discriminating or retaliating against Plaintiffs by excluding them from educational

services, programs and activities directly sponsored by the district and its component schools, failing to provide them with equal access to educational services, programs and activities directly sponsored by the district and its component schools, or providing them with inferior services, programs and activities directly sponsored by the district and its component schools, on the basis of their race. Defendants are aware of their own Title VI obligations.

40.    Plaintiffs suffered from racial harassment, discrimination and retaliation as they experienced unwelcome conduct, taunts, threats, hostile behavior, and racially-motivated hateful conduct based on their race. Title VI required Defendants to respond to the racial harassment and discrimination incurred by Plaintiffs because it was sufficiently serious to deny or limit Plaintiffs' ability to participate in and benefit from the Defendants' educational programs and activities and created a hostile and retaliatory environment. Defendants knew, for months, that Plaintiffs were the targets of racially motivated attacks and harassment, including the continued use of racial slurs, disparate application of rules and Codes, threatening behavior at school, and a staged walkout, but did not take prompt or effective steps reasonably calculated to end the harassment, eliminate the hostile environment, prevent its recurrence, or remedy its effects. To the contrary, Defendants told the Plaintiffs to stop being "siss[ies]" and intentionally allowed continued harassment to occur. Defendants School District and School Board acted knowingly, intentionally, recklessly and with deliberate indifference by allowing and tolerating the discrimination to occur in the first place, but also by allowing the retaliation to occur after Plaintiffs engaged in protected activity.

41.    Defendants, acting under color of law, deprived Plaintiffs of their right to educational services, programs and activities directly sponsored by the district and its component schools on the basis of their race. Defendants acted intentionally and with deliberate indifference to the likelihood that the federally protected rights of Plaintiffs would be violated and in fact were

16

violated multiple times through ongoing retaliation, and Defendants wholly failed to act in a manner sufficient to prevent or address both the discrimination and retaliation.

42.     By excluding Plaintiffs from educational services, programs and activities directly sponsored by the School District and its component schools, and segregating them by virtue of disparate treatment, Defendants discriminated Plaintiffs on the basis of their race and retaliated against Plaintiffs for engaging in protected activity.

43.     Through their actions and inactions on the basis of race, Defendants excluded Plaintiffs from participation in a public school education, educational services, programs and activities directly sponsored by the School District and its component school, and denied them the benefits of these programs, subjecting them to discrimination as set forth above.

44.     As a result of Defendants' actions and inactions, Plaintiffs have suffered and will continue to suffer irreparable harm, which includes but is not limited to the loss of educational time, the loss of educational opportunities and programs, the inability to overcome racial barriers, and diminished educational and future employment opportunities. Defendants' actions have caused and will continue to cause Plaintiffs to suffer compensable injuries, entitling Plaintiffs to damages.

45.     Plaintiffs seek declaratory and injunctive relief to remedy these ongoing violations, and also seek compensatory damages.

**Count III: Fourteenth Amendment Equal Protection Clause 42 U.S.C. § 1983**

46.     Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated.

47.     The 14th Amendment Equal Protection Clause provides that "No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United

17

States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

48.     Defendants, under color of state law, acted and continued to act pursuant to a policy and practice to deprive Plaintiffs of the right to equal protection of the laws under the 14th Amendment.

49.     Defendants maintain a custom, policy, and practice of excluding African American students, like M.T., from educational services, programs and activities directly sponsored by the School District and its component schools, and by treating these students differently. Further, Defendants maintained a policy and practice of both discriminatory and retaliatory discipline of students on the basis of race or for engaging in protected activity and voicing concerns of discrimination, were deliberately indifferent to the maintenance of a racially-hostile educational environment, and retaliated against parents and students, like Plaintiffs, who complained about racial discrimination. These policies were adopted and enforced with the intent to discriminate and retaliate against Plaintiffs on the basis of their race.

50.     As a result, Defendants denied Plaintiffs educational services, programs and activities directly sponsored by the district and its component schools, and access to other activities and programs available to public school students, and their full learning and earning potential. As a result of the Defendants' actions and inactions, Plaintiffs suffered and will continue to suffer irreparable harm, which includes but is not limited to the loss of education and educational opportunities provided to all through the athletic program, and inability to overcome racial barriers, and diminished educational and future employment opportunities. Defendants' actions have caused and will continue to cause Plaintiffs to suffer compensable injuries entitling Plaintiffs to compensatory damages.

51.   Plaintiffs seek declaratory and injunctive relief to remedy these ongoing, constitutional violations, and also seek compensatory damages.

**Count IV: Fourteenth Amendment Equal Protection Clause 42 U.S.C. § 1983**

52.   Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated.

53.   Through their actions and inactions, Defendants deprived Plaintiffs of their constitutionally protected property interest to a public education by denying them their right to educational services, programs and activities directly sponsored by the district and its component schools, and access to other activities and programs available to public school students, and their full learning and earning potential.

54.   Defendants' lack of any procedures following denial of these programs and services, including cancellation of the entire season, was constitutionally inadequate. Defendants denied Plaintiffs the right to receive educational services, programs and activities directly sponsored by the district and its component schools, and access to other activities and programs available to public school students, without appropriate procedures, including notice, an opportunity to be heard, or an avenue challenge an adverse determination. As a result, Defendants denied Plaintiffs notice and opportunity to be heard regarding their denial of educational services, programs and activities directly sponsored by the district and its component schools.

55.   Defendants acted pursuant to a custom, policy, and practice in depriving Plaintiffs of educational services, programs and activities directly sponsored by the School District and its component schools without notice or opportunity to be heard and retaliating against Plaintiffs for voicing concerns and engaging in protected activity.

56.     As a result the Defendants' actions and inactions, Plaintiffs suffered and will continue to suffer irreparable harm, which includes, but is not limited to, the loss of education and educational opportunities provided to all through the athletic program, and inability to overcome racial barriers, and diminished educational and future employment opportunities. Defendants' actions caused and will continue to cause Plaintiffs to suffer compensable injuries, entitling the Plaintiffs to compensatory damages.

57.     Plaintiffs seek declaratory and injunctive relief to remedy these ongoing, constitutional violations, and also seek compensatory damages.

**Count V: Florida Educational Equity Act, Fla. Stat. §§ 1000.05 et seq., and Fla. Admin. Code Ann R. 6A-19.001 et seq. 1983**

58.     Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated.

59.     The Florida Educational Equity Act prohibits the exclusion of or discrimination against students on the basis of race. *See* Fla. Stat. § 1000.05(2)(a). It also provides that "No person in this state shall, on the basis of race … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any public K-20 education program or activity … conducted by a public educational institution that receives or benefits from federal or state financial assistance." *Id.*

60.     Defendants' actions and inactions to exclude Plaintiffs from educational services, programs and activities directly sponsored by the district and its component schools, and access to other activities and programs available to public school students, violate the Florida's educational equity act. Defendants' policies and practices as described herein violate the rights of Plaintiffs under the Florida educational equity act. As a result of the Defendants' actions and inactions, Plaintiffs suffered and will continue to suffer irreparable harm, which includes, but is not limited

20

to, the loss of education and educational opportunities provided to all through the athletic program, and inability to overcome racial barriers, and diminished educational and future employment opportunities. Defendants' actions caused and will continue to cause Plaintiffs to suffer compensable injuries, entitling the Plaintiffs to compensatory damages.

61.    Plaintiffs seek declaratory and injunctive relief to remedy these ongoing violations, and also seek compensatory damages, attorneys' fees and costs, as provided by the statute.

**Count VI: Violation of Article IX, ¶ 1 of the Florida Constitution**

62.    Plaintiffs reallege and incorporate by reference the allegations set forth herein as if fully restated.

63.    As described herein, Defendants are denying African American students and parents, like Plaintiffs, equality before the law and are depriving them of their right to a uniform and high quality education and access to equivalent educational programs and services because of their race, in violation of Article IX, Section 1 of the Florida Constitution. As a result of these violations, Plaintiffs have suffered the harms and damages alleged herein.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this court:

a.    Assume jurisdiction over this matter;

d.    Declare that Defendants' acts and omissions violate Plaintiffs' rights under the EEOA, Title VI of the Civil Rights Act of 1964; the 14th Amendment Equal Protection and Due Process Clauses; the Florida Educational Equity Act; and the Florida Constitution;

I.    Declare Defendants to be liable for Plaintiffs' damages;

j.    Enter injunctive relief in the form of:

1. Requiring Defendants to adopt policies, procedures, and training to end defendants ongoing violations of the EEOA, Title VI, the US constitution and state law, and to publicize to the community at large and to class members, in a language and form of communication that they understand those new policies and procedures;

2. Allowing M.T. equal access to and participation in programs and activities offered by FMHS, including the baseball program; and

4. Requiring defendants to adopt policies and procedures to provide students with notice and an opportunity to be heard regarding educational decisions and disciplinary decisions.

k. Award compensatory damages to Plaintiffs for lost educational opportunities and employment opportunities as a result of the Defendants' conduct, and award damages for emotional distress, mental anguish, and or related emotional damages that Plaintiffs have incurred as a result of Defendants' unlawful conduct and violations of Title VI, and the Equal Protection and Due Process clauses of the 14th Amendment;

m. Award Plaintiffs reasonable attorney fees and cost pursuant to 42 USC §1988 and Fla. Stat. § 1000.05(7); and

n. Grant any other relief the court deems just in reasonable.

Respectfully submitted,

*/s/ Christopher O'Neal*
Christopher O'Neal, Esq

State Bar No. 910201
chris@bencrump.com
Natalie Jackson, Esq
State Bar No. 646075
Natalie@bencrump.com
Precious Chavez, Esq
State Bar No. 1040700
Precious@bencrump.com
**BEN CRUMP LAW PLLC**
122 S. Calhoun Street
TALLAHASSEE, FL 32301

    **-AND-**


**Marion M. Reilly, Esq** *(Pro Hac Forthcoming)*
Texas State Bar No. 24079195
Federal ID. No.  1357491
E-Mail:  marion@mrtrial.com
**MARTINEZ REILLY, LLP**
3636 S. Alameda, Ste. B119
Corpus Christi, Texas 78412
Telephone:  361.273.6771
Facsimile:  361.704.8355
**Service Email address
Service@mrtrial.com

    **-AND-**


**Joseph E. Hoffer, Esq (*Pro Hac forthcoming*)**
State Bar No. 24049462
Federal ID No. 2006011
Email: jhoffer@slh-law.com
**SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP**
845 Proton Road
San Antonio, Texas 78258
Telephone:  210-538-5385
Facsimile:  210-538-5384

    **-AND-**


**A. Vince Colella, Esq (*Pro Hac forthcoming*)**
Federal ID No. P49747
Email: Vcolella@mosscolella.com

**MOSS & COLELLA**
28411 Northwestern Hwy, 11th FL
Southfield, MI 48034
Telephone: 248.945.0100
Facsimile: 248.945.1801

**ATTORNEYS FOR PLAINTIFFS**

24

## VERIFICATION OF CHRISTOPHER O'NEAL

I, Christopher O'Neal declare and state, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information, and belief: I am an attorney duly licensed to practice law in the State of Florida and I am admitted to this practice law in this Court.

1.      I am counsel for Plaintiffs in this action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.      Exhibit 'A" is a true and correct copy of the redacted 36-page Title VI investigation Report of the FMHS Baseball program dated July 17, 2023.

3.      This Verification is being submitted in support of Plaintiff's Original Verified Complaint Cause No. 2-24-CV-00142.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 13, 2024

*/s/ Christopher O'Neal*

Verification of Christopher O'Neal                                                                                        1