UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL TUCKER, et al.

            *Plaintiffs,*

vs.

THE SCHOOL DISTRICT OF LEE
COUNTY, FLORIDA; et al.

            *Defendants.*

_____

CASE NO. 2:24-cv-142

## **MOTION TO DISMISS**

The School Board[1] and individuals move to dismiss Plaintiffs' Verified Complaint (Doc.1) under Rule 12(b)(6) and Rule 8(a)(2), and of the Federal Rules of Civil Procedure and pursuant to local rule 3.01(b) for the reasons stated below.

## **INTRODUCTION**

Plaintiffs, Michael Tucker and Azuree'd Tucker, are the parents to Plaintiff, M.T., an African American student-athlete at Fort Myers High School ("FMHS"). Compl. ¶17. According to Plaintiffs, The School District, The School Board, the Superintendent, the FMHS Athletic Director, the FMHS head baseball coach, the

---

[1] The School Board is the "nominal defendant because [the School District] has no independent legal existence under Florida law." *Teets v. Hillsborough Cty. Sch. Bd.*, No. 8:15-cv-0094, 2016 WL 7115981, at *1 n.1 (M.D. Fla. Nov. 7, 2016). Florida law provides that "[t]he governing body of each school district shall be a district school board" and that "[e]ach district school board is constituted a body corporate." Fla. Stat. § 1001.40. School boards are empowered to "operate, control, and supervise all free public schools in their respective districts." § 1001.32. Perhaps most importantly, the school board is authorized to "[c]ontract, sue, and be sued." § 1001.41(4)." *Lee v. Pierre*, 9:19-CV-81631, 2020 WL 13847521, at *3 (S.D. Fla. Jan. 28, 2020).

FMHS JV head baseball coach, FMHS' Principal, a FMHS teacher and coach, and the FMHS assistant baseball coach of discrimination and retaliating against M.T. based on his race.

Despite The School District having numerous anti-discrimination and retaliation policies, Plaintiffs collectively allege six counts against Defendants for discrimination based on race in violation of (i) the Equal Educational Opportunities Act of 1974, (ii) Title VI of the Civil Rights Act of 1964, (iii) deprivation of educational services in violation of the Fourteenth Amendment of the U.S. Constitution; (iv) deprivation of an opportunity to be heard in violation of the Fourteenth Amendment of the U.S. Constitution; (v) Florida Educational Equity Act Fla. Stat. && 1000.05; and (vi) Article IX, ¶ 1 of the Florida Constitution. Accepting all well-pleaded facts as true and drawing all permissible inferences in the Plaintiffs' favor results in but one inescapable conclusion: Plaintiffs have not, and cannot, plead any School Board action or policy caused them harm.

Rather, the Complaint's Exhibit A makes abundantly clear that The School Board implemented and enforced numerous anti-discrimination and harassment policies. Plaintiffs failed to allege any policy or custom of The School Board was the moving force behind any constitutional violation, and Plaintiffs' claims are due to be dismissed.

## BACKGROUND

Plaintiffs allege M.T. was exposed to "rampant race-based harassment" following a February 14, 2023, incident when FMHS' then assistant baseball coach, Defendant Alex Carcioppolo, mistakenly sent a group text message to the baseball team and coaching staff that included a perceived racial slur (the "February 14th incident"). *Id.* Mr. Carcioppolo immediately deleted the text message and apologized. *Id.* ¶18. Plaintiffs claim that M.T. "experienced retaliation from Defendants and others for speaking up and voicing concerns of discrimination." *Id.* at 19. Plaintiffs do not otherwise, beyond vague innuendos, attempt to explain how or who retaliated against M.T. based on race besides their conclusory theories.

Despite Plaintiffs conceding that school staff held numerous meetings after the February 14th incident to address the conduct and concerns and eventually removing Assistant Coach Carcioppolo and Head Coach Burchfield from their coaching duties, Plaintiffs now claim that The School Board tolerates and condones discrimination, retaliation, and harassment.

Other than the preceding paragraph, Plaintiffs' Motion is devoid of any factual allegations that allow the Court to draw the reasonable inference that the Defendants are liable. Plaintiffs' Motion is a dissertation of unsupported factual inferences, vague innuendos, and legal conclusions that fail to allege any

3

particular facts of discriminatory actions by Defendants. Plaintiffs heavily relied on the February 14th incident to conclude that The School Board condoned discrimination and allowed it to permeate the entire FMHS community despite immediately dismissing Mr. Carcioppolo and conducting an intensive investigation of the incident to ensure every team member felt welcome. (Doc. 1, Exhibit A, p. 4.)

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief …." Likewise, Rule 8(d)(1) requires each allegation to be "simple, concise, and direct."

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the "factual allegations must be enough to raise a right to relief above the speculative level… ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d

1333, 1337 (11th Cir. 2012) (internal marks omitted). Likewise, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). These pleading standards are based on two operative principles: "first, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions and . . . second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Randall v. Scott,* 610 F.3d 701, 708 (11th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal marks omitted); see also *Turner v. Williams*, 65 F.4th 564 (11th Cir. 2023)("A court considering a motion to dismiss for failure to state a claim can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Finally, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664).

## ARGUMENT

I.   **PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILING TO COMPLY WITH FED. R. CIV. P. 8(A) AND 10.**

A. **Impermissible Shotgun Pleading.**

Plaintiffs have not provided "a short and plain statement of the claim" as required by Rule 8(a)(2), Federal Rule of Civil Procedure. Rather, Plaintiff has asserted some 63 paragraphs that are largely irrelevant, hyperbolic, and better suited to a press release than a complaint in law. These paragraphs make assertions for which there is simply no basis in law.

The Eleventh Circuit has identified four general types of shotgun pleadings. First, a complaint containing "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). Second, a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* Third, A complaint that fails to separate into a different count each cause of action or claim for relief. *Id.* Lastly, a complaint that assets "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

Plaintiffs' Complaint is guilty of containing three of the four kinds of shotgun pleading. First, each count realleges and incorporates all prior allegations in the Complaint, improperly rendering the final count a combination

6

of the entire complaint. Compl. ¶¶ 27, 37, 46, 52, 58, 62. Thus, the Complaint is an impermissible shotgun pleading as it renders and warrants dismissal. *See Doe By v. Hernando Cnty. Sch. Dist.*, 8:23-CV-1772-CEH-AAS, 2023 WL 5758934, at *2 (M.D. Fla. Sept. 6, 2023)(dismissing as shotgun pleading complaint where each count incorporated all, or nearly all, prior allegations in the complaint, improperly rendering the final count a combination of the entire complaint.).

Next, the Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" and asserts multiple claims against multiple defendants without specifying which defendants are responsible for which acts or omissions or which defendants the claim is brought against. Across all counts, Plaintiffs vaguely conclude that "[a]s a result of Defendants" actions and inactions, Plaintiffs have suffered and will continue to suffer irreparable harm, which includes but is not limited to the loss of education and educational opportunities provided to all through the athletic program, and inability to overcome racial barriers, and diminished educational and future employment opportunities." Compl. ¶¶ 35, 44, 50, 56, 60, 63. Plaintiffs have failed to allege the factual elements of their claims against each individual defendant; in fact, there are few or no operative facts asserted against each individual defendant in their respective capacities. Similarly, Plaintiffs have not

7

alleged facts identifying which particular defendant's conduct is linked to which particular claim.[2]

Finally, the Complaint suffers from an additional problem: it does not clearly separate the claims of Michael Tucker, Azuree'd Tucker, and M.T. What legally protected interest did Michael Tucker and Azuree'd Tucker versus M.T. suffer, and at whose hand? Plaintiffs apparently posit that the reader should just accept the conclusory conflation that all Plaintiffs have somehow been harmed by all Defendants, without specifying who or how. *Gharfeh v. Carnival Corp.*, No. 17-20499-CIV, 2018 WL 501270, *6 (S.D. Fla. Jan. 22, 2018) (dismissing as shotgun pleading complaint that combined theories of respondeat superior and direct negligence into a single count).

Plaintiffs also have incorporated by reference virtually all of the general allegations without distinguishing which apply to which counts. Plaintiffs should "make clear exactly who is alleged to have done what to whom, to provide each [party] with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 564 n. 10); *cf. Baker v. McCollan*, 443 U.S. 137, 140 (1979) ("[I]t is necessary to isolate the

---

[2] *See discussion infra.* For example, Robert Butz is FMHS principal. Plaintiffs do not allege how Butz allegedly violated any of Plaintiffs' rights.

8

precise constitutional violation with which he is charged."); *Ashcroft*, 129 S. Ct. at 1948-49 (noting that this is certainly required before a "plausible" claim for discrimination is asserted against each defendant). This defect requires dismissal and an order for a more definitive statement. This court may order a more definitive statement—"[w]here, as here, the plaintiff asserts multiple claims for relief, a more definite statement, if properly drawn, will present each claim for relief in a separate count, as required by Rule 10(b)." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 983-84 (11th Cir. 2008).

## B. Claims Against Individual Defendants In Their Official Capacities.

Plaintiffs bring their claims against Defendants Stephan Cato, Kyle Burchfield, Alex Carcioppolo, Robert Hinson, Christopher Chapell, Robert Butz, and Christopher S. Bernier in their official capacity as Lee County School Board employees. ¶¶10-16. All claims asserted against these Defendants should be dismissed as duplicative of the claims against The School Board because a suit against government officials in their official capacities is in actuality a suit against the government entity. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (affirming directed verdict against city officers sued in their official capacity because "keep[ing] both the City and the officers sued in their official capacity as defendants in [the] case would have been redundant and possibly confusing to the jury").

Since it is alleged that the school officials acted on behalf of The School Board itself, in the remaining arguments Defendants will be collectively referred to as "The School Board."

## II. PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS OF ANY OFFICIAL SCHOOL DISTRICT ACTION RESULTED IN A VIOLATION OF PLAINTIFFS' RIGHTS.

### A. Applicable Standard.

Plaintiffs' legal theories all require a causal connection between some School Board action and Plaintiffs' pleaded harm. A Title VI statutory claim is analyzed identically to an equal protection claim. *Elston v. Talladega County Bd. of Educ.*, 997 F.2d 1394, 1405–06 n. 11 (11th Cir. 1993) ("Since Title VI itself provides no more protection than the equal protection clause—both provisions bar only intentional discrimination—we will not engage in a separate discussion of the Title VI statutory claims, as such an inquiry would duplicate exactly our equal protection analysis").

For section 1983 claims, Plaintiffs must identify a municipal policy causing injury, while also alleging the specific policy was the **moving force** of the alleged constitutional deprivations. *See Davis v. DeKalb Cnty. School Dist.*, 233 F.3d 1367, 1375 (11th Cir. 2000); *see also Cuesta v. School Bd. of Miami-Dade Cnty., Fla.*, 285 F.3d 962, 967 (11th Cir. 2002). "[M]unicipal liability under § 1983," to be certain, "attaches where—and **only** where—a deliberate choice to follow a course of

10

action is made **from among various alternatives** by [officials] responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (emphasis added).

To establish an equal protection clause or Title VI violation, Plaintiffs must demonstrate (1) an action by The School Board that was **motivated by an intent to discriminate** against Plaintiffs based on their race or (2) The School Board had a policy or practice that had a disparate impact on Plaintiffs based on their race. *Elston*, 997 F.2d at 1406. Under the second theory, Plaintiffs must show "a causal link between the defendant's challenged practice and the disparate impact identified." *Id.*

## B. Plaintiffs Fail to Allege Sufficient Facts of a School Board Action.

Plaintiffs' Complaint fails to allege facts of official actions by The School Board or any animus based on race. Rather, Plaintiffs asserted some 63 paragraphs that are largely "redundant, immaterial, impertinent, or scandalous matter," and are due to be struck. Fed. R. Civ. P. 12(f). Even taken together, these paragraphs fail to state a claim.

i.     *Lee County School Board*

No operative facts are alleged against The School Board, other than the allegation that The School Board is a public school system and local educational agency in Fort Myers, Lee County, Florida. Compl. ¶8. Plaintiffs broadly

11

conclude that The School Board could have controlled discriminatory conduct by unspecified persons and that The School Board "both knew of, allowed and through inaction tolerated a discriminatory and racially hostile educational environment to exist to the detriment of M.T.'s legal rights." *Id*. ¶1.

Plaintiffs further allege The School Board "astonishingly attempted to justify the use of the racial slur, indicating that '[t]here are differing perceptions over the use of stylized version of the N-word, 'nigga,' depending on the persons' backgrounds and ethnic/racial identities,'" which demonstrated The School Boards condoning discrimination. *Id*. ¶26. Actually, the full quote of Plaintiffs' Exhibit A, p. 32, demonstrates the complete opposite of their theory.  It states:

> There are differing perceptions over the use of a stylized version of the N-word, "nigga," depending on the persons' backgrounds and ethnic/racial identities. In context, this version has been used in popular culture for several decades among musicians, sports figures, and others considered celebrities. This has normalized the usage and led to differing perceptions of who may use the word, situations in which it may be used, etc. **For the record, the School Board of Lee County does not tolerate the usage of any version of the word and sees all versions as a violation of the non-discrimination policy 1.27 and Code of Conduct for Students**.

*See Chadee v. Ocwen Loan ervicing, LLC*, 243 F. Supp. 3d 1283, 1288–89 (M.D. Fla. 2017) ("[W]hen allegations in a pleading conflict with the exhibits attached, the exhibits control.") (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009)). In any event, Plaintiffs' inadequate allegations regarding The School Board do not give rise to a legally cognizable claim, let alone justify the legal conclusion

that The School Board tolerated or condoned discrimination, retaliated against M.T., or otherwise violated Plaintiffs' rights.

In sum, no operative facts are alleged against The School Board other than the allegation that the School Board oversees public schools in Lee County, Florida, and is the contracting agent on behalf of The School Board. Compl. ¶9. Again, Plaintiffs broadly conclude that the School Board condoned discrimination and allowed it to "permeate and fester throughout the entire FMHS community." *Id.* ¶26.

i.    *Christopher S. Bernier*

No operative facts are alleged against Bernier other than the allegation that he is the Superintendent of The School Board of Lee County, including FMHS. *Id.* ¶10. The mere fact that Bernier is the Superintendent does not establish any legally cognizable claim against The School Board, let alone a claim for violating Plaintiffs' rights.

ii.    *Robert Butz*

No operative facts are alleged against Butz other than the allegation that he is the Principal of FMHS who removed Defendant Burchfield from his coaching duties. *Id.* ¶¶ 14,24. It cannot reasonably be inferred from these facts that Butz's actions give rise to any legally cognizable claim, let alone a claim for violating Plaintiffs' rights. It is impossible to imagine how removing Burchfield

13

from his coaching duties is Constitutionally actionable. If anything, Principal Butz's action of removing Burchfield for participating in the walk-out shows that FMHS did not condone his behavior.

  *iii.*  *Stephan Cato*

No operative facts are alleged against Cato other than the allegation that he is FMHS Athletic Director and was present at the park where the walk-out occurred. *Id.* ¶¶ 11,24. It cannot reasonably be inferred from these facts that Cato's actions give rise to any legally cognizable claim, let alone a claim for violation of Plaintiffs' rights.

  *iv.*  *Christopher Chapell*

No operative facts are alleged against Chapell besides the allegation that he is FMHS JV baseball's head coach and joined the players during the walk-out. *Id.* ¶¶ 13, 24. Even if true, these sparse allegations do not establish any legally cognizable claim against the School Board.

  *v.*  *Robert Hinson*

No operative facts are alleged against Hinson other than the allegation that he is a FMHS teacher and baseball coach. *Id.* ¶15. Plaintiffs alleged that Hinson participated in the walkout and said to an unknown person, "[y]ou need to be a man and take a stand with us." *Id.* ¶24. Even if true, these facts do not support

14

any legally cognizable claim, let alone a claim of discrimination by The School Board based on race in violation of Plaintiffs' rights.

### vi. *Kyle Burchfield*

No operative facts are alleged against Burchfield besides the allegation that he is the FMHS head baseball coach. *Id*. ¶12. Plaintiffs alleged that at some unspecified time, unknown students reported to Burchfield and Carcioppolo the use of derogatory racial slurs (not by Burchfield or Carcioppolo) but were told to "stop 'acting like a sissy' for being 'bothered' by the use of the slurs." *Id*. ¶19. The Complaint fails to specify who made this statement and to whom. Even if true, there are no allegations that the School Board knew of this incident or condoned it. In fact, the School staffremoved Burchfield from his coaching duties due to complaints. *Id.* ¶24.

### vii. *Alex Carcioppolo*

The only operative fact alleged against Carcioppolo is that he was the FMHS assistant baseball coach and mistakenly sent a text message to the team that included a perceived racial slur. *Id*. ¶2. These facts cannot reasonably infer that Carcioppolo's actions give rise to any legally cognizable claim against The School Board or that it tolerated racial discrimination, especially when Carcioppolo was immediately removed from his coaching duties the following day. Compl. Exhibit A, p. 4.

In any event, Plaintiffs have pleaded insufficient facts to support a claim against the School Board based on the actions of individual staff. A municipal body is only liable for its own violations of constitutional rights and is not vicariously liable for the injuries caused by those acting on its behalf. Rather, a plaintiff must allege that the local government's "policy or custom" was the "moving force" behind any alleged constitutional deprivation. *Davis*, 233 F.3d at 1375 (holding that a plaintiff must specifically identify the policy or custom causing the injury). This requirement ensures that liability will not be based on an isolated incident or pattern that is not proximately caused by the local government. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2003).

It cannot be logically inferred that The School Board took any action to intentionally discriminated or retaliate against Plaintiffs. In conclusion, the purpose of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978) and progeny is to place liability where it belongs. There are no facts alleged of official actions that may be fairly attributable to the entity.

### C. Plaintiffs fail to identify any Lee County policy supporting § 1983 liability.

Plaintiffs have failed to state 42 U.S.C. § 1983 federal constitutional claims upon which relief may be granted. To support a section 1983 claim, Plaintiffs must allege sufficient facts, *inter alia,* that a School Board policy or procedure deprived Plaintiffs of a federal right and that a policy or custom of the School

16

Board was the "moving force" of the deprivation. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Monell*, 436 U.S. at 694.

A municipality can be sued directly under § 1983 when one of its customs, practices, or policies causes a constitutional injury. *Barnett*, 956 F.3d at 1296. Determinations of final policy-making are a matter of law. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). "A policymaker's approval of an unconstitutional action can constitute unconstitutional [local government] policy only when the policymaker 'approves a subordinate's decision and the basis for it.'" *Gattis v. Brice*, 136 F.3d 724, 727 (11th Cir. 1998) (internal marks omitted); *Clark v. Sch. Bd. of Collier Cnty., Florida*, 213CV820FTM29MRM, 2016 WL 1617920, at *4 (M.D. Fla. Apr. 22, 2016)(saying, "ratification must be of the basis for the decision, not just the decision itself").

However, as noted above, the factual elements of such a claim have not been pleaded against any person or entity with policy-making authority. Further, school employees are not the alter ego of the School Board unless the School Board has delegated its power to them. *Board. Beck v. Littlefield*, 68 So.2d 889 (Fla. 1953)(explaining that a local government speaks only through its official actions and minutes). The comments of a few individual employees cannot legally be ascribed to the board as whole, nor to its superintendent. *Id.; Mason*, 240 F.3d at 1340. "A member or employee of a governing body is a final policy maker only if

17

[1] his decisions have legal effect without further action by the governing body, and . . . [2] the governing body lacks the power to reverse the member or employee's decision." *Harland*, 370 F.3d at 1292 (internal citations omitted).

Plaintiffs do not allege that any of the athletic staff had any final policymaking authority. Thus, Plaintiffs have failed to sufficiently allege that their injuries resulted from a School Board "policy or custom" or lack of such policy. Plaintiffs' conclusory allegations may be consistent with a conflated conspiracy theory of liability, but they do not meet the plausibility standard on the crucial issue of who is liable. The whole point of *Monell* and its progeny is to place liability where it properly lies. *Monell*, 436 U.S. 658.

Plaintiffs § 1983 claims fail for similar reasons. Plaintiffs do not identify a single policy upon which Counts 3 and 4 rest. On the contrary, the School Board has numerous School Board anti-discrimination policies that Plaintiffs fail to allege but are listed Board in Exhibit A.[3]

> Non-Discrimination Policy 1122: prohibits discrimination on the basis of race (including anti-Semitism), color, ethnicity, national origin, sex, sexual orientation, gender identification, gender expression, disability, (physical or mental), pregnancy, marital status, age (except as authorized by law), religion, military status, socioeconomic status, linguistic preference, genetic information,

---

[3] Ordinarily, a court's 12(b)(6) analysis is limited to the face of the complaint. "However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

ancestry, or any other reason protected under applicable federal, state, or local law. Exhibit A, pp. 1-2.

Code of Conduct for Students: Provides disciplinary direction for profanity that includes the use of racial slurs and other derogatory terms. *Id*. p. 2.

Bullying and Harassment Policy 5517.01: Specifies the requirements and procedures for any specific allegation of bullying and/or harassment toward an individual including class based and non-class-based incidents, in accordance with Florida's Jeffrey Johnston "Stand Up For All Students Act" (1006.147, F.S.). *Id.*

Policy 0125: Requires all personnel to adhere to federal and state laws, school board policies, and other applicable regulations and rules. The policy requires that all administrators and educators adhere to the high standards of The Principles of Professional Conduct for the Education Profession in Florida. *Id*.

These policies rebut Plaintiffs contention that The School Board condoned and tolerated discrimination as these expressly prohibit and enforce discrimination "on the basis of race" in Lee County public schools. Furthermore, the entirety of Exhibit A shows that The School Board staff takes any allegations of racial discrimination with the utmost seriousness and follows and enforces these policies. "It is only when the execution of a policy, not the violation of a policy, causes the injury that the government entity may be held liable." *Mouton v. Sch. Bd. of Collier Cnty.*, 2:11-CV-568-FTM-29, 2012 WL 3639004, at *3 (M.D. Fla. Aug. 23, 2012).

Plaintiffs go on to vaguely allege some new Code of Conduct "*appeared targeted only to [M.T.]*" and was "inconsistently and unfairly implemented

against M.T. in retaliation for the false belief that Defendant Carcioppolo was deprived of coaching because of M.T." Compl. ¶¶20,21. In conclusory fashion Plaintiffs allege the unfair implementation was caused by enforcing more severe consequences than previously provided for the same infraction, which could be for no other reason than M.T.'s race. *Id*. Plaintiffs fail to otherwise explain what this the new rule prohibited and how it was applied in an intentionally discriminatory manner against M.T., nor how it was applied differently to any other substantially similarly situated comparator in all material respects, *Earle v. Birmingham Bd. of Educ.*, 843 Fed. Appx. 164, 167 (11th Cir. 2021)(saying, "treating different things differently" does not "make out a prima facie case of […] race discrimination").

Again, Plaintiffs claims are refuted by their own exhibit. Exhibit A clearly states that students and parents complained of inconsistent and unfair application of the non-profanity rule between students who play "travel ball" in the off-season and those who do not. Exhibit A, p. 5-6. None of these complaints alleged that the inconsistency was due to race. "In short, even assuming that the allegations in the complaint are true, there is no plausible basis for imposing § 1983 liability on the School Board." *Files v. DeKalb Cnty. Sch. Dist.*, No. 1:11-CV-1798-JEC, 2012 WL 716055, at *4 (N.D. Ga. Mar. 5, 2012) (Carnes, J.). Plaintiffs fail to allege any discriminatory motive or action on the part of the School Board, and the School

20

Board cannot, as a matter of law, be held accountable under § 1983 for a single isolated event. *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015).

### D. Plaintiffs Fail To Allege Neither A Discriminatory Animus On The Part Of The School Board Nor A Causal Link Between Any Ostensible Animus And Alleged Harm.

Plaintiff repeatedly implies that the School Board failed to "foster an environment where every student can thrive and excel, unimpeded by the shackles of illegal discrimination, racism, prejudice and bias." Compl. ¶4. Plaintiffs reference a FMHS riot that occurred in 1969 to support their theory that "FMHS has a long history associated with resistance to integration" (*id*. ¶26.) but fail to allege any causal link between this 55-year-old incident, and Plaintiffs pleaded harm. *Id.* ¶26. Nevertheless, Plaintiffs have not pled particular facts to any discipline dissimilar treatment to M.T. based on his race by the School Board, other than their theories and conclusions. In fact, the Plaintiffs concede that another African-American baseball player was on the team but made no claims that this other player was disciplined differently because of his race. *Miley*, 790 F.3d at 1296.

Plaintiff further relied on a team "walk-out" during one game to conclude that they were internationally discriminated against by the School Board based on their race, depriving them of education and potential employment opportunities. However, even a cursory reading of Exhibit A is sufficient to

21

reveal that the "division" amongst the team had nothing to do with race. Instead, "the disparate treatment was based on the division in the team between those that play 'travel ball' and those who do not." Exhibit A, p. 9. Therefore, no discriminatory animus has been alleged other than Plaintiffs own conclusions. Simply put, there is no plausible inference of animus by and on behalf of The School Board against Plaintiffs that the Court can draw on these alleged facts. Dismissal would still be appropriate even if, assuming solely for the sake of argument, Plaintiffs identified some animus attributable to Mr. Carcioppolo. As pled, Mr. Carcioppolo is not a member of the School Board nor has final policy-making authority. "Final policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997).

### III.   PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF AN EEOA CLAIM.

#### A. Applicable Standard.

"[T]he EEOA provides protections similar to those provided by the Equal Protection Clause." *United States v. City of Yonkers*, 96 F.3d 600, 620 (2d Cir. 1996). The underlying "purpose of the EEOA is equality of educational opportunity." *Jackson v. Waller Indep. Sch. Dist.*, No. H-07-3086, 2009 WL 3078489, at *14 (S.D. Tex. Sept. 24, 2009); *Hanover Cnty. Unit of the NAACP v. Hanover Cnty.*, 461 F.

Supp. 3d 280, 299 (E.D. Va. 2020). "Section 1703(b) is violated if a school district that formerly practiced segregation fails to take affirmative steps to remove the vestiges of a dual school system, defined as one that assigns students to schools on the basis of race or other impermissible criteria.... [T]here must ... be a finding that there are vestiges of the former dual school system and that the educational agency failed to take affirmative steps ... to remove those vestiges." *Id*. at *13. "The causal link between current conditions and the prior violation is even more attenuated if the school district has demonstrated its good faith." *Freeman v. Pitts*, 503 U.S. 467, 496 (1992). "In formulating a remedy for a denial of equal educational opportunity or a denial of the equal protection of the laws, a court ... shall ... impose only such remedies as are essential to correct particular denials of equal educational opportunity or equal protection of the laws." 20 U.S.C. § 1712. Here, the Complaint and its exhibits make it clear that The School Board and its officials acted in good faith to address the issues that arose involving the baseball team.

Further, Plaintiffs do not allege any facts of how or what equal educational opportunities The School Board denied. *Hanover Cnty. Unit of the NAACP v. Hanover Cnty.*, 461 F. Supp. 3d 280, 302 (E.D. Va. 2020). Nor does the Complaint make factual allegations that there was any deliberate segregation or discrimination by school officials. Conversely, the Complaint makes clear that

23

The School Board had strict policies against discrimination, took those policies seriously by extensively investigating complaints of discrimination, and enforced those policies, including, but not limited to, firing both the coach and assistant coach. In any event, the Plaintiffs' EEOA claim should be dismissed for the same reasons as their equal protection and Title VI claims. *Georgia State Conference of Branches of NAACP v. State of Ga.*, 775 F.2d 1403, 1422 (11th Cir. 1985); *Groves v. Alabama State Bd. of Educ.*, 776 F. Supp. 1518, 1519 (M.D. Ala. 1991) (saying the EEOA "do[es] not afford any greater protection to plaintiffs in this case than does Title VI.").

## IV. PENDENT STATE LAW CLAIMS.

Because Plaintiffs' federal claims are due to be dismissed, their state-law claims may likewise be dismissed. *See, e.g., Skurstenis v. Jones*, 139 F. Supp. 2d 1291, 1293 (N.D. Ala. 2001) ("[W]hen federal claims are dismissed before trial, the preferred course for a federal court to follow is to decline jurisdiction over the state-law claims . . . .").

## <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request the Court dismiss the Complaint. (Doc. 1) Plaintiffs fail to show that any alleged grievances arise from a discriminatory animus from a School Board policy. Even if Plaintiffs could demonstrate such animus, it is ultimately the former baseball coaches

24

whom The School Board removed from their duties, and thus, there is no causal link as required by Title VI  and EEOA. Last, far from identifying any actionable School Board policy, Plaintiffs allege the opposite. The School Board had anti-discrimination policies and procedures and took official action to condemn any perceived discriminatory behavior as outlined in Exhibit A. Plaintiff's conclusory; threadbare allegations are insufficient to state a claim against The School Board. Accordingly, the Complaint is due to be dismissed.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Defendants certifies that he conferred with counsel for Plaintiffs, regarding this *Motion to Dismiss Complaint*. Plaintiffs' counsel was unable to agree in good faith to the relief sought.

Respectfully submitted,

*s/ James D. Fox*

James D. Fox
Florida Bar No. 689289
Roetzel & Andress, LPA
999 Vanderbilt Beach Rd., Suite 401
Naples, FL  34108
(239) 649-6200
jfox@ralaw.com
serve.jfox@ralaw.com
*Attorneys for Defendant, Lee County School Board*

25

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2024 this document was electronically transmitted to the Clerk of Court via the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*s/ James D. Fox*
James D. Fox

26