**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MEYERS DIVISION**

MICHAEL TUCKER, Individually & §
AZUREE'D TUCKER, Individually & on §
behalf of M.T., a Minor Child §
    *Plaintiffs,* §
     §
     §
V. §     CIVIL ACTION NO. <u>2:24-cv-142</u>
     §
     §
THE SCHOOL §
BOARD OF LEE COUNTY, FLORIDA; §
STEPHAN CATO; KYLE BURCHFIELD; §
ALEX CARCIOPPOLO; ROBERT §
HINSON; CHRISTOPHER CHAPELL; §
ROBERT BUTZ; and CHRISTOPHER S. §
BERNIER, Ph.D. §
    *Defendants.* §

## <u>PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND IN THE ALTERNATIVE MOTION FOR LEAVE OF COURT TO AMEND COMPLAINT</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs MICHAEL TUCKER, Individually, and AZUREE'D TUCKER, Individually and on behalf of their minor son, M.T. (collectively, "Plaintiffs"), and file their Response to Defendants', The School Board of Lee County, Florida, Stephan Cato, Kyle Burchfield, Alex Carcioppolo, Robert Hinson, Christopher Chapell, Robert Butz; and Christopher S. Bernier (collectively, "Defendants"), Motion to Dismiss Plaintiffs' Amended Complaint, and in the alternative, Motion for Leave of Court to Amend their Complaint, pursuant to

1

Federal Rule of Civil Procedure 15(a)(2). In support thereof, Plaintiffs would respectfully show the Court the following:

**<u>INTRODUCTION</u>**

1.      The principles of nondiscrimination and nonretaliation are each a cornerstone of justice, fairness, and equality within public educational institutions. Doc. 41 ¶ 1. Unfortunately, the public schools within The School District of Lee County, Florida (the "School District") and operating under the jurisdiction and authority of the School Board of Lee County, Florida (the "School Board") violate these cornerstone principles time and time again. *Id.* This lawsuit underscores a disturbing narrative of bias and exclusion within the School District's Fort Myers High School and its sports program, where M.T., an African American student-athlete, as well as his parents, encountered and were subject to unlawful obstacles and barriers to his educational opportunities and their lawfully protected participation in same, solely based on their race and as a result of their protectected activities. *Id.* M.T. experienced and suffered from unequal treatment in access to both educational resources and opportunities, from discriminatory practices in team selection, coaching decisions, and disciplinary action as well as unlawful retaliation against M.T. and his parents for asserting their rights. *Id.* M.T. was unlawfully targeted and discriminated against, including but not limited to being peppered with racial slurs, threats, and derogatory remarks, by school officials, administration and

others the School Board could control, where the School Board both knew of, allowed, through inaction tolerated and even perpetuated a discriminatory, retaliatory and racially hostile educational environment to exist to the detriment of M.T.'s and his parents' legal rights. *Id.* M.T.'s experiences paint a troubling picture of systemic and institutionalized race-based discrimination within Fort Myers High School's athletic department, the School District and the School Board. *Id.*

2.     On February 14, 2024, Plaintiffs filed their Verified Original Complaint against Defendants, complaining of a history and pattern of racial discrimination, specifically one which directly affected Plaintiffs and M.T.'s future educational and athletic prospects. Doc. 1.

3.     On March 12, 2024, Defendants filed a Motion to Dismiss Plaintiffs' Original Complaint, in which Defendants alleged several deficiencies in Plaintiffs' pleading, including "improper shotgun pleadings." Doc. 30.

4.     On May 17, 2024, Plaintiffs filed their Amended Verified Complaint in response to Defendants' Motion to Dismiss in response to the alleged deficiencies that Defendants had asserted. Doc. 41. In Plaintiffs' Amended Verified Complaint, Plaintiffs realleged four causes of action against Defendants for their improper actions: (1) Violation of Title VI of the Civil Rights Act of 1964 on behalf of M.T.; (2) Violation of Title VI of the Civil Rights Act of 1964 on behalf of Michael Tucker and Azuree'D Tucker; (3) Violation of 42 U.S.C. § 1983; and (4) Violation of Florida

3

Educational Equity Act, Fla. Stat. §§ 1000.05 et seq., and Fla. Admin. Code Ann R. 6A-19.001 et seq. 1983.

5. On July 1, 2024, Defendants filed their Motion to Dismiss Plaintiffs' Amended Complaint, in which Defendants have asserted three primary arguments against Plaintiffs' live pleading: (1) failing to comply with Federal Rules of Civil Procedure 8(a) and 10(b) via what they incorrectly frame to be "impermissible shotgun pleadings"; (2) failing to allege sufficient facts of a Title VI or Equal Protection violation; and (3) failing to allege sufficient facts of a violation of the Florida Educational Equity Act ("FEEA"). Doc. 47.

**AUTHORITIES AND ARGUMENTS**

6. Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Under the Supreme Court's standard in *Twombly* and *Ashcroft*, to satisfy Rule 8(a)(2) the pleading is not required to contain "detailed factual allegations," however, it must contain more than "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 57 (2007)).

7. As Defendants acknowledge in their Motion to Dismiss, for Plaintiffs' claims to survive a dismissal under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

8.    Importantly, the Court must "accept as true all of the allegations contained in [the] complaint," as Rule 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era"; however, the Court is absolved from applying this tenet to legal conclusions. *Id.* Despite this, "legal conclusions can provide the framework of a complaint," so long as they are supported by "factual allegations." *Id.* at 679. Additionally, a complaint "that states a plausible claim for relief survives a motion to dismiss," which is found where the Plaintiffs have shown they are entitled to relief. *Id.* (citing FED. R. CIV. P. 8(a)(2)). Moreover, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## I.    THE COMPLAINT COMPLIES WITH FED. R. CIV. P. 8(a) & 10(b)

### A.    The Complaint is Not a Shotgun Pleading.

9.     Defendants allege Plaintiffs fail to comply with Federal Rules of Civil Procedure 8(a) and 10(b) due to "Impermissible Shotgun Pleading." *See* Doc. 47, at *6. The Eleventh Circuit recognizes four types of shotgun pleadings and Defendants allege that Plaintiffs are guilty of violating each type[1]. This is not so.

10.    Dismissals under Rule 8 are "usually confined to instances in which the complaint is so verbose, confused and redundant that its true substance, if any, is well disguised." *Hearns v. San Bernardino Police Dep't,* 530 F.3d 1124, 1131 (9th Cir. 2008) internal quotation marks and citation omitted). But a complaint, like the one at bar, does not violate Rule 8 if it is "logically organized" and presents enumerated legal claims, each of which lists the liable Defendants and legal basis therefor. *Id.*

11.    Moreover, a shotgun pleading is a complaint that is replete with conclusory, vague, and immaterial facts that are immaterial, and not obviously connected to any particular cause of action, making it virtually impossible to know which allegations of fact are intended to support which claims for relief. *Williamson v. Travelport, LP,* 953 F.3d 1278 (11th Cir. 2020). Contrary to Defendants'

---

[1] *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321–22 (11th Cir. 2015); Doc. 47, at *7 ("First, each count realleges and incorporates all prior allegations in the Complaint, improperly rendering the final count a combination of the entire complaint. . . . Second, the Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" and asserts multiple claims against multiple defendants without specifying which defendants are responsible for which acts or omissions or which defendants the claim is brought against. . . . Third, Count III does not separate into a different count each cause of action or claim for relief because it contains an equal protection claim and a due process claim. . . . Finally, the Complaint suffers from an additional problem: it does not clearly separate the claims of Michael Tucker, Azuree'd Tucker, and M.T. What legally protected interest did Michael Tucker and Azuree'd Tucker versus M.T. suffer, and at whose hand?").

allegations, Plaintiffs' Amended Complaint delineates four distinct causes of action and identifies facts related to each of those causes of action. Doc. 41 at 13, 15, 18, 20. Moreover, where Plaintiffs discuss the Defendants' conduct globally, it is because *all* the Defendants participated and perpetrated the respective conduct. *Kyle K. v. Chapman,* 208 F.3d 940, 944 (11th Cir. 2000) ("The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.). Although the facts are voluminous, each claim for relief does not indiscriminately incorporate all of the factual allegations set forth in the prior claims and the allegations are germane. *Williamson v. Travelport, LP,* 953 F.3d at 1278.

12. The Eleventh Circuit also recognizes the unifying characteristic of each type of shotgun pleading is that the pleadings fail to give defendants "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (citing *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir. 2001).

13. Simply put, Defendants cannot assert Plaintiffs fail to provide "adequate notice of the claims against them and the grounds upon which each claim rests," as Plaintiffs claims are most certainly not "calculated to confuse the enemy" nor the Court. Plaintiffs provide Defendants with four (4) concise causes of action

that are articulated over no more than eight (8) pages, and each cause of action indicates against whom the action is being brought against, all of which are named Defendants to this suit. The Complaint contains material details regarding Defendants' improper actions and inactions regarding the unlawful discrimination M.T. and his parents were forced to undergo at the hands of Defendants. *Contra Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (finding improper shotgun pleadings where Plaintiff had pled nineteen (19) counts with factual allegations that are irrelevant to the underlying claims over fifty (50) pages. *See id.* at 1325.

14. Finally, "a dismissal with prejudice, whether on motion or *sua sponte*, is an extreme sanction that may be properly imposed only when: '(1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice.'" *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337–38 (emphasis omitted) (quoting *World Thrust Films, Inc. v. Int'l Family Entm't, Inc.*, 41 F.3d 1454, 1456 (11th Cir.1995)). In the unlikely event the Court agrees that further narrowing of the allegations is required, Plaintiffs respectfully request leave to amend to remove reference to other portions of the complaint and provide additional detail addressing Defendants' complaints regarding the form of the Complaint.

**B.    The Official Capacity Claims Seeking Injunctive Relief are Proper.**

15.     Defendants request dismissal of the claims against the individual defendants in their official capacity, arguing they are redundant of the claims against the School Board.  In making this argument, Defendants overlook that not all claims are asserted against all of the defendants, and also completely ignore the state law claims and the claims for injunctive relief—the latter of which are proper against the individual defendants.  Under *Ex Parte Young,* 209 U.S. 123 (1908), and its progeny it is well established that prospective injunctive relief may be obtained against state officials in their official capacities in order to prevent "*continuing* violations of federal law." *Summit Med. Assocs., P.C., v. Pryor,* 180 F.3d 1326, 1336-37 (11th Cir. 1999); *see also Grizzle v. Kemp,* 634 F.3d 1314, 1319 (11th Cir. 2011) ("[A] suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state."). To the extent that Defendants contend there would be redundancy, there would not be because the Title VI claim is asserted *only* against the School Board, not the individual defendants. Because the causes of action are appropriately tailored, there is no risk of confusion for the jury.

16.     Additionally, Count IV is not brought against the School District but against the individual defendants in their official capacities.  As recognized by other Florida district courts, claims against individuals in their official capacities are appropriate under the Florida Educational Equity Act, Fla. Stat. §§ 1000.05, et seq.

*See Pernell v. Florida Bd. of Governors of State Univ. Sys.,* 641 F. Supp. 3d 1218, 1264-65 (N.D. Fla. 2022). Accordingly, the claims against the individual defendants in their official capacities should not be dismissed.

## II. PLAINTIFFS' ALLEGE SUFFICIENT FACTS FOR THEIR TITLE VI CLAIM TO SURVIVE DISMISSAL.[2]

17. Title VI of the Civil Rights Act provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d. To state a claim for discrimination under this statute, a plaintiff must plausibly allege that the (1) defendants discriminated based on race; (2) discrimination was intentional; and (3) discrimination was a substantial or motivating factor for the defendant's actions. *Methelus v. Sch. Bd. of Collier Cnty, Fl.,* 243 F. Supp. 3d 1266, 1277 (M.D. Fl. 2017).

18. Here, Plaintiffs allege that Defendants discriminated against M.T. based on his race because of Defendants' custom, policy, and practice of excluding African American students from participating in educational programs and activities, including participation on the baseball team. Defendants move to dismiss the Title

---

[2] It appears Defendants did not revise their Motion to Dismiss to target allegations in Plaintiffs' First Amended Complaint. Notably, Plaintiffs' Title VI claim is alleged only against the recipient of federal funding, the School Board, and not against the individual defendants. Therefore, Defendants' discussion of the Title VI claims against the individual defendants is moot.

VI claim for failure to state a claim. As detailed below, because there are sufficient facts alleged against the School Board, the Motion should be denied as to this ground.

19. In *Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 266-67 (1977), the Court stated that deciding whether discriminatory intent was a motivating factor in decision-making requires analysis of direct and circumstantial evidence. Courts may, among other things, examine any outsized impact on a protected class, the historical background of the decision, the specific sequence of events leading up to the decision. Procedural and substantive departures from the norm, and legislative or administrative history to determine if sufficient evidence of discriminatory intent exists. *Id.* at 266-68.

20. Here, Plaintiffs allege that the only two African American students on the baseball team experienced hostility after a coach sent a message to the Team referring to "niggas." Doc. 41 at 8-9. After the exchange, M.T. was ostracized at games, team dinners, and school events, experienced a barrage of race-based negative comments: "Defendants knew, for months, that M.T. was the target of racially motivated attacks and harassment, including the continued use of racial slurs, disparate application of rules and Codes, threatening behavior at school, and a staged walkout, but did not take prompt or effective steps reasonably calculated to

end the harassment, eliminate the hostile environment, prevent its recurrence, or remedy its effects." Doc. 41 at 14.

21. Plaintiffs allege M.T. was subjected to a "new Code of Conduct that appeared targeted only to him and disciplining only him for perceived violations of the new-fangled Code of Conduct that was merely pretext for the school's discrimination and retaliation." Doc. 41 at 8-9. Plaintiffs alleged that this new Code "was inconsistently and unfairly implemented against M.T. in retaliation for the false belief that Defendant Carcioppolo was deprived of coaching because of M.T. … In attempting to enforce these new rules targeting M.T., the consequences issued by the coaching staff to M.T. were considerably more severe than previously provided for the same infraction. The disparate application of the new rules was the result of racial bias, discrimination, and retaliation towards the African American students, including M.T., and his parents. The new rules were inconsistently applied largely along the line of family division—with more infractions and stiffer consequences being faced by the African American students, including M.T." Doc. 41 at 9.

22. Plaintiffs also allege

- A permissive environment in which the use of derogatory racial terms is intentionally tolerated and condoned;

- Inconsistent discipline with more infractions and harsher punishments being meted out to African American students, like M.T., on the basis of the color of their skin;

- Intentionally allowing rampant threats, hostility, and harassment to occur against African American students, like M.T.;

- Intentionally exposing African American students, like M.T. to known harassment, embarrassment, and disparagement by other students, faculty and staff;

- Retaliatory application of discipline and revisions of the Codes of Conduct unfairly targeted African American students, like M.T.;

- Reduced playing time and cancelled seasons on the basis of racism and discrimination and in retaliation for engaging in protected activities; and

- Condoned and participated in horrific retaliatory acts against M.T. and his parents by publicly humiliating and shaming M.T. and his parents, and condoning and/or encouraging others to do the same."

Doc. 41 at 15.

23.  As evidenced in Exhibit A to the Complaint,[3] circumstantial evidence also supports intentional discrimination, including:

    a. "A permissive environment in which the use of profanity and derogatory racial terms are tolerated without adequate consequence.

    b. Inconsistent application of discipline as part of this permissive environment.

    c. Some actions, including application of discipline and revision of rules, are interpreted by some to unfairly target students belonging to protected classes under Title VI. …

---

[3] Exhibit A was filed in conjunction with the Original Complaint. It was referenced and incorporated by the Amended Complaint, but was inadvertently not re-attached. As it is part of the docket, and referenced by both parties, Plaintiffs respectfully request that the Court consider the exhibits as attached to the Amended Complaint, or grant Plaintiffs leave to amend to attached this Exhibit, which is referenced. *See Ajamu v. U.S. Postal Serv.,* No. 6:13-cv-450-Orl-28KRS, 2014 WL 169830, at *2 n. 1 (M.D. Fla. Jan. 10, 2014) (considering exhibits attached to original complaint when resolving motion to dismiss the amended complaint where it appeared plaintiff inadvertently forgot to re-file the exhibits when he filed the amended complaint).

d. Playing-time of individuals is at least affected in part through these inconsistencies." Doc. 1, Ex. A.

24. Reviewing the well-pleaded facts in a light most favorable to Plaintiffs, they state an actionable Title VI claim, and dismissal of this claim is not warranted.

## III. PLAINTIFFS' ALLEGE SUFFICIENT FACTS FOR THEIR § 1983 CLAIM.

25. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432 (1982). Generally, equal protection violations arise when the state classifies and treats "some discrete and identifiable group of citizens differently from other groups." *See Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.,* 682 F.3d 1293, 1296 (11th Cir. 2012). In order to state an equal protection claim, the plaintiffs must therefore show that the state treated them differently than other similarly situated persons based on their membership in an identifiable group or class of persons. *See id.; see also Leib v. Hillsborough Cty. Pub. Transp. Comm'n,* 558 F.3d 1301, 1305 (11th Cir. 2009). "[P]roof of discriminator intent or purpose is a necessary prerequisite to any Equal Protection Clause claim." *Corey,* 682 F.3d at 1297 (*citing Parks v. City of Warner Robins,* 43 F.3d 609, 616 (11th Cir. 1995)). Notably, for purposes of stating an equal protection claim against a supervisor pursuant to § 1983, the plaintiff must allege

facts showing that the supervisory defendant acted with discriminatory intent or purpose. *See N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.,* 418 F. Supp. 3d 957, 985–86 (N.D. Fla. 2019). Specifically, this requires the plaintiffs to show that the supervisory defendants undertook a discriminatory action "because of, not merely in spite of, the action's adverse effects upon an identifiable group." *See Ashcroft v. Iqbal,* 556 U.S. at 677.

26. Here, Plaintiffs allege that they and other African Americans were intentionally treated differently than non-African American students. Doc. 41 at 18 ("Defendants maintain a custom, policy, and practice of excluding African American students, like M.T., from education services, programs and activities directly sponsored by the School District and its component schools, and by treating these students differently. Further, Defendants maintained a policy and practice of both discriminatory and retaliatory discipline of students on the basis of race or for engaging in protected activity and voicing concerns of discrimination, were deliberately indifferent to the maintenance of a racially-hostile educational environment, and retaliated against parents and students, like Plaintiffs, who complained about racial discrimination. These policies were adopted an enforced with the intent to discriminate and retaliate against Plaintiffs on the basis of their race. It similarly alleged that Defendants concealed, failed to stop, and failed to adequately address the actions targeting African American students because of their

race. *See, e.g.,* Doc. 41 at 19 ("Defendants' lack of any procedures following denial of these programs and services, including cancellation of the entire season, was constitutionally inadequate.").

27. In addition, Plaintiffs allege deliberate action taken by coaches of the FMHS Baseball team, as well as deliberate inaction. *See* Doc. 41 ¶ 16, 23. Plaintiffs assert Defendant Alex Carcioppolo asserted racially discriminatory statements against Plaintiff M.T. via the text message sent on February 14, 2023, and have also shown that Defendants were compliant in allowing the "walk-out" of the baseball game to occur on April 6, 2023, leaving Plaintiff M.T. to suffer the repercussions of this discriminatory act, despite individually named Defendants having prior knowledge of the walk-out being planned. *Id.* ¶ 23.

28. It is clear based on Florida law that Defendants had a duty to protect Plaintiffs from the racially discriminatory actions which Plaintiff M.T. and his parents were forced to undergo through racially discriminatory text messages, their exclusion from FMHS team events by scheduling and hosting events outside of the organized team boosters setup through FMHS, and through the organized walk-out of the April 6, 2023 FMHS baseball game. *See, e.g., Nova Se. Univ., Inc. v. Gross*, 758 So.2d 86, 88–89 (Fla. 2000) (citing *Rupp v. Bryant*, 417 So.2d 658, 666 (Fla. 1982)); *see also Limones v. Sch. Dist. of Lee Cnty.*, 111 So.3d 901, 904 (citing *Leahy v. Sch. Bd. of Hernando County*, 450 So.2d 883, 885); *see also Zalkin*, 639 So.2d at

16

1021. Despite the School Board and individually named Defendants' duty to protect Plaintiff M.T. from these discriminatory action, Defendants failed to take any actions to actually correct the discriminatory forces which Plaintiff M.T., one of only two black men on the FMHS baseball team, had to endure, forces which clearly demonstrate a disparate impact upon Plaintiff M.T. compared to any other white member of the FMHS baseball team.

## IV. PLAINTIFFS ALLEGE SUFFICIENT FACTS FOR THEIR PENDENT STATE LAW CLAIM

29. Last, Defendants claim Plaintiffs' pendent state law claim—a violation of the Florida Educational Equity Act (FEEA)—should summarily be dismissed for the same reasons asserted upon Plaintiffs' Title VI and Equal Protection claims, and that M.T.'s mother and father lack standing to bring a claim under FEEA. Doc. 47, at *26–27.

30. Similarly, and as described above in paragraphs 25–28, Plaintiffs' cause of action against Defendants for a violation of FEEA survives Defendants' Motion to dismiss for the same reasons Plaintiffs' Title VI and Equal Protection claims survive dismissal. As Defendants have noted, "[t]he analysis of discrimination claims is applicable to claims brought under Florida Educational Equity Act (FEEA). *Ren v. University of Cent. Florida Bd. of Trustees*, 390 F.Supp.2d 1223 (M.D. Fla.2005), affirmed, 179 Fed. Appx. 680. Without needlessly restating the same arguments as Plaintiffs have asserted in paragraphs 25–28, Plaintiffs would assert

the same arguments contained in the proceeding paragraphs, considering Federal Courts seated in Florida have held that the standard for reviewing these types of claims is synonymous.

## IN THE ALTERNATIVE, PLAINTIFFS' MOTION FOR REQUEST OF LEAVE OF COURT TO AMEND VERIFIED COMPLAINT

31.     Federal Rule of Civil Procedure 15(a)(2) contemplates that a court will freely grant leave to file an amended complaint when the interests of justice so require, unless granting leave for amendment would be futile. FED. R. CIV. P. 15(a)(2); *see Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)) (holding a "district court's discretion to deny leave to amend a complaint 'is severely restricted' by FED. R. CIV. P. 15, which stresses that courts should freely give leave to amend 'when justice so requires"). Eleventh Circuit Courts have held that leave would only be futile where "an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)); *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019); *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017).

32.     The standard for granting leave is readily met here, as the more detailed description of the discriminatory actions at issue in the Amended Complaint narrows

the scope of the issues presented in this litigation and will prevent the Court's time from being wasted at trial. The Supreme Court determined that "[i]n the absence of . . . undue delay, bad faith or dilatory motive . . . undue prejudice . . . futility of amendment, etc.—the leave sought should . . . be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Moreover, Defendants will not face any substantial prejudice from granting Plaintiffs' Motion for Leave to amend their complaint as this action is in its infancy, as it was first brought less than six months ago, and no significant discovery has been conducted.

33. Importantly, Plaintiffs' Second Amended Complaint would not add any new causes of action but would rather more clearly describe the discriminatory actions at issue in the current causes of action identified in Plaintiffs' First Amended Verified Complaint and more clearly attribute fault to specifically named Defendants.

<b><u>REQUEST FOR RELIEF</u></b>

WHEREFORE, Plaintiffs respectfully request that this court:

a. Deny Defendants' Motion to Dismiss Plaintiffs' Verified Amended Complaint in totality, finding that Plaintiffs have pled sufficient factual content that allows the Court to draw reasonable inferences that the Defendants are liable for their misconduct; and further, to permit Plaintiffs to proceed forward to discovery under their alleged causes of action; or

b.	In the alternative, grant Plaintiffs' Motion for Leave of Court to Amend their Complaint in the interest of justice, pursuant to Federal Rule of Civil Procedure 15(a)(2), as granting this motion would allow Plaintiffs to describe in further detail the discriminatory actions at issue in this cause, eliminating disputes over form that would waste this Court's time.

Respectfully submitted,

/s/ Christopher O'Neal
Christopher O'Neal, Esq
State Bar No. 910201
chris@bencrump.com
Natalie Jackson, Esq
State Bar No. 646075
Natalie@bencrump.com
Precious Chavez, Esq
State Bar No. 1040700
Precious@bencrump.com
**BEN CRUMP LAW PLLC**
122 S. Calhoun Street
TALLAHASSEE, FL 32301

**-AND-**

*/s/ Marion M. Reilly, Esq*
Texas State Bar No. 24079195
Federal ID. No.  1357491
E-Mail:  marion@mrtrial.com
**MARTINEZ REILLY, PLLC**
3636 S. Alameda, Ste. B119
Corpus Christi, Texas 78412
Telephone:  361.273.6771
Facsimile:  361.704.8355
**Service Email address
Service@mrtrial.com

**-AND-**

**Joseph E. Hoffer, Esq**
State Bar No. 24049462

Federal ID No. 2006011
Email: jhoffer@slh-law.com
**SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP**
845 Proton Road
San Antonio, Texas 78258
Telephone:  210-538-5385
Facsimile:  210-538-5384

    -AND-

 **A. Vince Colella, Esq**
 Federal ID No. P49747
 Email: Vcolella@mosscolella.com
 **MOSS & COLELLA**
 28411 Northwestern Hwy, 11th FL
 Southfield, MI 48034
 Telephone:  248.945.0100
 Facsimile:  248.945.1801

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 22, 2024, this document was electronically transmitted to the Clerk of Court via the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Marion M. Reilly, Esq*