UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
Case No. 24-00142-CIV-DIMITROULEAS/HUNT

MICHAEL TUCKER, and
AZUREE'D TUCKER, individually
and on behalf of M.T., a Minor Child,

        Plaintiffs,

v.

THE SCHOOL BOARD OF LEE COUNTY, FLORIDA; STEPHAN CATO; KYLE BURCHFIELD; ALEX CARCIOPPOLO; ROBERT HINSON; CHRISTOPHER CHAPELL; ROBERT BUTZ; and CHRISTOPHER S. BERNIER, Ph.D.,

        Defendants.
_____/

## REPORT AND RECOMMENDATIONS

This matter is before this Court on a Motion to Dismiss by Defendants. ECF No. 29. The Honorable William P. Dimitrouleas, United States District Judge, previously referred this case to the undersigned for a Report and Recommendation. *See* 28 U.S.C. § 636(b). Having carefully reviewed the Motion, the Response, the entire case file, and applicable law, and being otherwise fully advised in the premises, the undersigned hereby RECOMMENDS that the Motion be GRANTED for the reasons laid out below.

    I.    <u>Background</u>

The First Amended Complaint alleges in relevant part that Plaintiff M.T., an African American student-athlete, was subjected to race-based discrimination, during both extracurricular activities and the school period, while participating as one of only two African American players on the Fort Myers High School baseball team.

The alleged harassment began with a February 14, 2023 text message from Defendant Alex Carcioppolo, an assistant coach on the baseball team, which read: "Happy Valentine's Day niggas." The message was sent to both the team and coaching staff. Defendant Carcioppolo later deleted the message following complaints, claiming that he sent it to the wrong group. Team members were split as to whether the message was problematic, and some blamed M.T. for the backlash against the assistant coach.

Following the incident, a meeting was held with the team, the high school's Athletic Director, coaches, and school assistant principals. Students on the team reported they regularly heard racial slurs being used among team members and that this was known by staff. The Complaint alleges students directly reported the use of derogatory racial slurs to Defendants Carcioppolo and Kyle Burchfield, head coach for the baseball team, but were told to stop "acting like a sissy" for being "bothered" by the use of the slurs. Plaintiffs allege M.T. then experienced retaliation from Defendants and others for speaking up and voicing concerns of discrimination.

A series of meetings followed, but Defendants[1] allegedly refused to allow discussion of Defendant Carcioppolo or directly address harassment the African American teammates experienced. M.T.'s parents got involved following a series of confrontations, both during team activities and during the school day. Plaintiffs allege Defendants engaged in retaliation against M.T. and his parents to force M.T. off the team, including enforcing a new Code of Conduct that appeared targeted at M.T. The Complaint

---

[1] Where possible, the specific Defendants involved are identified. Otherwise, the attribution is as generally alleged in the Complaint.

further alleges Defendants subjected M.T. to ostracization and race-based commentary by students and staff at games, team dinners, and school events.

M.T.'s parents were likewise targeted for speaking out about the alleged discrimination and prejudice. Defendants allegedly deliberately failed to include M.T.'s parents in educational decisions regarding their son. Defendants also allowed parents of M.T.'s teammates to directly provide financial benefits to the baseball program, skirting the official Athletic Booster Club and allowing them to sponsor events for the team privately to avoid including M.T. and his parents.

On April 5, 2023, Principal Robert Butz removed Defendant Burchfield from his coaching duties. The following day the baseball team played a game at which Defendant Stephan Cole (FHMS Athletic Director) was present and where college scouts and recruiters attended to watch and evaluate the players for future scholarships and university recruitment. However, unbeknownst to M.T., the Defendants, FMHS coaches and staff, FMHS students, and other FMHS parents allegedly planned a "walk out" in response to the termination. Defendants allegedly knew the walkout was going to occur as early as March 9, 2023.

When it was M.T.'s turn at bat, a group of FMHS players began to walk out of the dugout, leaving only M.T. and the other African American student on the field. Parents, staff, and administrators allegedly cheered the players on, while school district faculty and staff, including Defendants Hinson and Chappell, joined the players walking out. Kids and parents allegedly began to yell at one another, and some yelled at Plaintiffs, with racial slurs being thrown around. Following the walkout, all the remaining games of the season were cancelled.

Defendants now seek to have the Complaint dismissed on multiple grounds. ECF No. 47. The Motion has been fully briefed and is now ripe for determination.

II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "To meet this 'plausibility standard,' a plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Arias v. Integon Nat'l Ins. Co.*, No. 18-22508-CIV-ALTONAGA/GOODMAN, 2018 WL 4407624, at *2–3 (S.D. Fla. Sept. 17, 2018) (quoting *Iqbal*, 556 U.S. at 678). "A complaint may be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Reilly v. Herrera*, 622 F. App'x 832, 833 (11th Cir. 2015).

"On a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts its factual allegations as true." *Id*. (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)). "Unsupported allegations and conclusions of law, however, will not benefit from this favorable reading." *Id*. (citing *Iqbal*, 556 U.S. at 679).

III. Discussion

Defendants make several arguments as to why Plaintiffs' Amended Complaint should be dismissed. First, Defendants argue that Plaintiffs' Amended Complaint constitutes an impermissible "shotgun pleading" and thus must be dismissed. Next, Defendants contend Plaintiffs' claim should be dismissed against the individuals named

in their official capacities because, Defendants argue, the claims are duplicative as the suit is in actuality a suit against the government entity, namely, the School Board. Defendants further allege any claim under § 1983 cannot succeed because the Complaint fails to allege an official action made by the School Board with the required discriminatory intent; therefore, the Complaint fails to state a valid claim under Title VI and section 1983. Finally, Defendants argue this Court should not take up Plaintiffs' state law claim alleging a violation of the FEEA for the same reasons Plaintiffs' Title VI and equal protection claims are insufficient.  Because Plaintiffs' federal claims are due to be dismissed, Defendants contend, Plaintiffs' state law claims may likewise be dismissed.

The undersigned begins with Defendants' argument that the Complaint fails to comply with Fed. R. Civ. P. 8(a) and 10(b).  Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as "shotgun pleadings."  *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).  Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief," while  Rule 10(b) provides in relevant part that "a party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."   *Id.* (quoting Fed. R. Civ. Pro. 8, 10).

> Courts have generally identified four types of shotgun pleadings.
>
> The most common type . . . is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims

> against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland,* 792 F.3d at 1321–23 (footnotes omitted).

Defendants allege Plaintiffs' Complaint is guilty of all four types of shotgun pleadings. First, Defendants contend that because each count realleges and incorporates all prior allegations in the Complaint, the Complaint improperly renders the final count a combination of the entire Complaint. Next, Defendants argue the Complaint is replete with conclusory, vague, and immaterial facts that are not connected to any particular cause of action, and fails to properly identify which Defendants are responsible for particular acts or omissions, or even which Defendants a particular claim is brought against. Additionally, Defendants take issue with Plaintiffs' vague conclusions that said actions caused Plaintiffs' irreparable harm. Defendants further note at least two of the claims are alleged against the Lee County School District, an entity not named as a Defendant.[2]

As may be evident from the factual recitation, Plaintiffs' Complaint falls into the fourth category of shotgun pleadings, in that it fails to adequately identify which Defendants, specifically, are responsible for which acts or omissions. And this failure is critical to the claims at issue, which have relatively specific requirements and particular defenses that hinge on who, in particular, did what, and when.

---

[2] The School District was named as a Defendant in the initial Complaint, but was dropped as a Defendant in the Amended Complaint.

Take, for instance, Plaintiffs' Title VI claim. Certainly, Plaintiffs make clear the claim is brought against the School Board, a named Defendant, and the School District which does not appear to have been named as a Defendant. As to the Board (and District), Plaintiffs allege

> Defendants knew, for months, that M.T. was the target of racially motivated attacks and harassment, including the continued use of racial slurs, disparate application of rules and Codes, threatening behavior at school, and a staged walkout, but did not take prompt or effective steps reasonably calculated to end the harassment, eliminate the hostile environment, prevent its recurrence, or remedy its effects. To the contrary, Defendants told M.T. to stop being a "sissy" and intentionally allowed continued harassment to occur. Defendants School District and School Board acted knowingly, intentionally, recklessly and with deliberate indifference by allowing and tolerating the discrimination to occur in the first place, but also by allowing the retaliation to occur after M.T. engaged in protected activity.

ECF No. 29 at 13-14.

Plaintiffs also allege generally that Defendants have enabled:

- A permissive environment in which the use of derogatory racial terms is intentionally tolerated and condoned;
- Inconsistent discipline with more infractions and harsher punishments being meted out to African American students, like M.T., on the basis of the color of their skin;
- Rampant threats, hostility, and harassment to occur against African American students, like M.T.;
- African American students, like M.T. to be exposed to known harassment, embarrassment, and disparagement by other students, faculty and staff;
- Retaliatory application of discipline and revisions of the Codes of Conduct unfairly targeting African American students, like M.T.;
- Reduced playing time and cancelled seasons on the basis of racism and discrimination and in retaliation for engaging in protected activities; and
- Retaliatory acts against M.T. and his parents by publicly humiliating and shaming M.T. and his parents, and condoning and/or encouraging others to do the same.

*Id.* at 14.

Plaintiffs argue they have alleged enough facts to demonstrate the School Board committed a violation under Title VI. Plaintiffs note they contend Defendants

discriminated against M.T. based on his race because of Defendants' custom, policy, and practice of excluding African American students from participating in educational programs and activities, particularly on the baseball team.  Plaintiffs argue they allege African Americans on the baseball team experienced hostility after a racial slur was texted by a coach, and were ostracized, harassed, and denied playing opportunities for months following the Defendant Carcioppolo's demotion from coaching.  Plaintiffs also note they allege the new Code of Conduct rules inappropriately targeted M.T. and were used as a tool of harassment for the African American players in retaliation for the issues that followed Defendant Carcioppolo's demotion.  Plaintiffs argue they allege the School Board knew about all these things but did nothing to stop the harassment and appeared to tolerate it.  These allegations are enough, according to Plaintiffs, to survive Defendants' Motion to Dismiss.

However, Defendants argue Plaintiffs' Complaint nonetheless fails to adequately allege discriminatory action by the School Board.  Specifically, Defendants argue there are no operative facts alleged against the Lee County School Board and the Complaint instead broadly alleges the Board could have controlled the discriminatory conduct at issue.

This is problematic in that Title VI claims require that "for a school district to be liable for damages, an 'appropriate person' must have had actual notice of the harassment and an opportunity to rectify any violation." *Brooks v. Skinner*, 139 F. Supp. 3d 869, 883 (S.D. Ohio 2015) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).  An "'appropriate person' is an official 'who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [school

district's] behalf[.]'" *Id.* (quoting *Gebser*, 524 U.S. at 290). "In applying *Gebser*, appellate courts have required actual knowledge by the school board itself, the school superintendent, or a school principal." *Id.*

A reasonable reading of the Complaint reveals the only allegation explicitly regarding either a member of the School Board, the superintendent, or the principal is that "on April 5, 2023, Principal Robert Butz removed Defendant Burchfield from his coaching duties." ECF No. 29 at 11. Defendants are correct that this statement is far from what is necessary. Plaintiffs' specific allegations are simply not enough to establish liability, and their general allegations fail to close the necessary gap to put Defendants on notice of the allegations against them.

To be sure, the Complaint certainly alleges a horrific campaign of harassment against Plaintiffs occurred. This alone, however, is not enough to survive the Motion to Dismiss. Defendants correctly point out that Plaintiffs have merely broadly concluded that the School Board could have controlled discriminatory conduct by unspecified persons, but Plaintiffs have alleged no operative facts demonstrating that ability, or anything that would justify the conclusion that the School Board tolerated or condoned discrimination, retaliated against M.T. or his parents, or otherwise violated Plaintiffs' rights.[3]

A similar fate befalls Plaintiffs' 1983 claims. Defendants here also argue Plaintiffs have failed to clearly separate the claims against the various Defendants. As above, the Complaint alleges generally (1) that Defendants maintained a policy and

---

[3] Defendants also argue Plaintiffs have failed to adequately allege a Title VI claim against the individual Defendants. Plaintiffs concede this, noting they allege the Title VI claim against only the School Board. But the fact that Defendants could plausibly be confused as to whom the claim was directed against highlights the problematic nature of the pleading.

practice of both discriminatory and retaliatory discipline of students on the basis of race or for engaging in protected activity, namely voicing concerns of discrimination, (2) that Defendants were deliberately indifferent to the maintenance of a racially hostile educational environment, and (3) that Defendants retaliated against parents and students who complained about racial discrimination. These allegations, Plaintiffs contend, are enough for their 1983 claim to survive a motion to dismiss.

Although Plaintiffs respond the Complaint at issue is properly organized and presents enumerated legal claims listing the liable Defendants and the legal basis for the particular claims against them, a fair reading of the Complaint does not bear this out. As an initial matter, Defendants are correct that it is difficult, if not impossible, to determine which of the Defendants Plaintiffs bring the claims against. At best, a reader can know that "[t]his cause of action is not alleged against the School District of Lee County, Florida." ECF No. 29 at 18. As noted above, there is no indication that the School District is a party in any way to this case. Further, although the School District is referred to in the 1983 count, not a single actual Defendant is referred to by name. Instead, all actions are attributed to all Defendants. This, again, is not enough to give Defendants notice of the claims brought against them.[4]

As to the state law count, the undersigned notes it also suffers from the same deficiencies as the prior counts, in that it alleges generally the "Defendants" (but again, explicitly not the non-Defendant District) engaged in acts and omissions depriving

---

[4] Defendants also argue the 1983 claims improperly allege both a due process and equal protection claim while also containing allegations of both substantive due process and procedural due process violations. As with the previous footnote, such plausible confusion again speaks to the pleading's deficiencies.

Plaintiffs of educational opportunities. Additionally, because none of Plaintiffs' federal claims survive, the undersigned would nonetheless recommend this Court decline to exercise supplemental jurisdiction over the state law claims. 28 U.S.C.A. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction.").

In short, Plaintiffs' Complaint, with few exceptions, fails to offer basic "facts concerning 'who did what to whom and why.'" *Olson v. Loy*, 951 F. Supp. 225, 228 (S.D. Ga. 1996). And even when Plaintiffs do allege specific acts by particular Defendants, they fail to offer adequate connective tissue to join those facts to their legal claims. It is simply impossible from the face of the Complaint to know who, other than Defendant Carcioppolo, used derogatory racial terms, instated the new Code of Conduct and meted out discipline unfairly, or issued threats, harassment and retaliation against any of the Plaintiffs. It is entirely possible that Plaintiffs have valid claims against the individual Defendants, the School Board, and perhaps the School District, but the Complaint lacks the necessary detail to make that determination. Given this, Defendants have not been given "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1321–23. The Complaint, therefore, must be dismissed.

IV. <u>Leave to Amend</u>

Plaintiffs have requested that this Court, should it find their Complaint deficient, allow them leave to amend the Complaint. Rule 15 of the Federal Rules of Civil Procedure "reflects a policy of 'liberally permitting amendments' and absent a 'substantial reason to deny leave to amend' a plaintiff's request should be granted." *Produce Pay, Inc. v. Agrosale, Inc.*, 533 F. Supp. 3d 1140, 1143 (S.D. Fla. 2021) (quoting *Espey v. Wainwright,*

11

734 F.2d 748, 750 (11th Cir. 1984)). "In order to deny leave to amend, the Court must identify a 'justifying reason.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Further, "[l]eave to amend should not be denied on the ground of futility unless the proposed amendment is clearly insufficient or frivolous on its face." *Id.* (quoting *Montes v. M & M Mgmt. Co.*, No. 15-80142-CIV-MARRA, 2015 WL 11254703, at *1 (S.D. Fla. May 12, 2015)). Although this would be the second time Plaintiffs have amended their complaint, the undersigned sees no reason to deny them another opportunity to plead their case. Defendants have not opposed Plaintiffs' request, and Plaintiffs' Complaint is neither "clearly insufficient or frivolous on its face." *Id.* The undersigned would, therefore, recommend granting Plaintiffs' request to be allowed to file an amended complaint.

## **RECOMMENDATION**

For the foregoing reasons, the undersigned respectfully RECOMMENDS Defendants' Motion to Dismiss, ECF No. 47, be GRANTED, and Plaintiffs be given leave to amend their Complaint.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  Any response shall be filed within three (3) days of the objections.  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE and SUBMITTED** at Fort Lauderdale, Florida, this 29th day of May 2025.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable William P. Dimitrouleas
All counsel of record