UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL TUCKER, et al.

                  *Plaintiffs,*

vs.

THE SCHOOL BOARD OF LEE
COUNTY, FLORIDA; et al.

                  *Defendants.*

_____

CASE NO. 2:24-cv-142

## **MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendants move to dismiss Plaintiffs' Second Amended Complaint (Doc. 64) under Rule 12(b)(6) and Rule 8(a)(2) of the Federal Rules of Civil Procedure as follows:

## **INTRODUCTION**

On July 8, 2025, Plaintiffs filed their third Complaint in a continued attempt to revive previously dismissed claims under Title VI, the Equal Protection and Due Process Clauses via 42 U.S.C. § 1983, the Equal Educational Opportunities Act (EEOA), the Florida Educational Equity Act (FEEA), and Article IX, Section I of the Florida Constitution. Despite multiple opportunities and clear guidance from this Court, Plaintiffs again fail to cure the same fundamental pleading defects and remains an impermissible shotgun pleading.

Plaintiffs broadly allege that the School District, the School Board, and seven individual employees—including Christopher S. Bernier, Stephan Cato, Robert Butz, Kyle Burchfield, Christopher Chapell, Robert Hinson, and Alex Carcioppolo—collectively discriminated and retaliated against them based on race. Yet, the Complaint is devoid of any operative facts showing that any Defendant acted with discriminatory intent, violated clearly established law, or that any School Board policy or custom was the moving force behind a constitutional violation.

In sum, Plaintiffs' Complaint is a compilation of unsupported factual inferences, vague innuendos, and legal conclusions. The 187 paragraphs are largely irrelevant, speculative, and better suited to a press release than a pleading in law. Plaintiffs have failed to allege any operative facts that would allow the Court to draw a reasonable inference of liability. Their claims are legally baseless and must be dismissed with prejudice.

## BACKGROUND

Plaintiffs, Michael Tucker ("Dad") and Azuree'd Tucker ("Mom"), allege that their son M.T., an African American student-athlete at Fort Myers High School ("FMHS"), was subjected to race-based harassment following a February 14, 2023 incident in which then-assistant coach Alex Carcioppolo mistakenly sent a text

2

message containing a perceived racial slur. Carcioppolo immediately deleted the message and apologized.

Swift and decisive action was taken by the School Board to remove Carcioppolo from his coaching duties immediately following the February 14, 2023 incident. Yet, months later, Plaintiffs baselessly allege that staff, students, and other parents orchestrated a "walkout" during a scheduled baseball game—not due to racial discrimination, but in protest of Carcioppolo's removal. This timeline alone undermines Plaintiffs' theory of systemic racial animus. The walkout was not a reaction to M.T.'s race or any protected activity—it was a misguided show of support for a coach who had already been removed. Plaintiffs' attempt to recast this protest as racially motivated is not only unsupported by facts—it is contradicted by their own allegations and the record.

Notably, M.T. did not complain about the message, and Plaintiffs concede that school staff responded promptly—holding meetings and ultimately removing both Carcioppolo and Kyle Burchfield from their coaching duties [Doc. 64 ¶¶2, 16–19]. Despite these swift and remedial actions, Plaintiffs continue to rely on vague innuendo, speculative theories, and conclusory assertions to claim that the School Board condoned discrimination and retaliation.

Plaintiffs further allege retaliation against M.T. for "voicing concerns of discrimination," yet fail to identify who retaliated, how, or when. The Complaint

is devoid of any operative facts linking any Defendant's conduct to discriminatory animus or a School Board policy or custom. Plaintiffs' heavy reliance on a single, promptly addressed text message—even when combined with their other vague and speculative allegations—is wholly insufficient to support a claim that the School Board condoned discrimination or allowed it to permeate the FMHS community.

The record reflects that staff were removed and a thorough investigation was conducted to ensure a welcoming environment for all students. Plaintiffs instead take issue with the enforcement of profanity rules—rules they themselves demanded be applied with zero tolerance—and now claim that enforcement against M.T. was racially motivated, while ignoring M.T.'s own conduct and repeated violations. This leap in logic is unsupported by any facts. Moreover, Plaintiffs acknowledge that M.T. was the team's "star" player, yet they implausibly assert that he was denied equal educational opportunities because the baseball season was canceled for all players. This claim is not only illogical—it is factually absurd.

## STANDARD OF REVIEW

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the "factual allegations must

be enough to raise a right to relief above the speculative level…." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal marks omitted). Likewise, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

**ARGUMENT**

## I.    PLAINTIFFS' COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING (AGAIN)

Plaintiffs' entire Complaint should be dismissed—yet again—for failing to comply with Fed. R. Civ. P. 8(a) and 10(b). Despite multiple opportunities and clear guidance from this Court, Plaintiffs continue to file an impermissible shotgun pleading. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). This is Plaintiffs' third attempt, and they have still failed to remedy the same pleading deficiencies this Court and the Eleventh Circuit have repeatedly condemned—including dismissal on identical grounds in related Case No. 2:24-cv-00321 (*T.R., et al. v. The School Board of Lee County, Florida, et al.*).

The Complaint improperly incorporates all prior allegations into each count, asserts multiple claims against multiple Defendants, and fails to specify which Defendant is responsible for which act or omission against which Plaintiff.

5

Counts I–II and V–X are alleged against both the School Board and the School District, despite the School District having no independent legal existence under Florida law.[1] Counts III and IV are asserted against all individual Defendants by all Plaintiffs, yet fail to distinguish between claims brought in individual versus official capacities—each of which requires a separate legal and factual analysis.[2]

This continued conflation of claims, parties, and legal theories—after three full attempts—prejudices Defendants and is precisely the type of pleading defect the Eleventh Circuit has repeatedly condemned. *See Doscher v. Holding, No. 22-13184, 2023 WL 6060559, at \*1 (11th Cir. Sept. 18, 2023); Ashcroft*, 556 U.S. at 678. Plaintiffs' continued failure to provide fair notice is not just procedurally improper—it is inexcusable. The Eleventh Circuit has made clear that shotgun pleadings "waste scarce judicial resources" and warrant dismissal. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018); *Weiland*, 792 F.3d at 1321.

Dismissal with prejudice is warranted. Plaintiffs have had ample opportunity to correct these defects and have failed to do so.

---

[1] The School District has no independent legal existence under Florida law. *See Teets v. Hillsborough Cty. Sch. Bd.*, No. 8:15-cv-0094, 2016 WL 7115981, at \*1 n.1 (M.D. Fla. Nov. 7, 2016); Lee v. Pierre, 9:19-CV-81631, 2020 WL 13847521, at \*3 (S.D. Fla. Jan. 28, 2020); Fla. Stat. §§ 1001.40, 1001.41(4), 1001.32. Any claims against the "School District" are improper and duplicative, and the School Board remains the sole nominal defendant in this action.

[2] As discussed *infra*, suits against government officials in their official capacities is in actuality a suit against the government entity (the School Board). School board officials in their individual capacities can raise qualified immunity as a defense.

## II.    PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS OF A TITLE VI, EQUAL PROTECTION, OR EEOA VIOLATION

Plaintiffs' claims under Title VI, the Equal Protection Clause, and the EEOA are fatally deficient and must be dismissed. Each of these claims requires well-pleaded facts showing intentional discrimination or deliberate indifference by each Defendant, as well as a direct causal connection between such conduct and the alleged harm. *See Elston v. Talladega County Bd. of Educ.*, 997 F.2d 1394, 1405–06 n.11 (11th Cir. 1993). Plaintiffs, however, offer nothing more than speculation, group pleading, and conclusory assertions. *See Turner v. Williams*, 65 F.4th 564 (11th Cir. 2023) ("…conclusions, are not entitled to the assumption of truth.").

Plaintiffs fail to allege a single specific fact showing that the School Board, its policymakers, or staff acted with intentional discriminatory animus or deliberate indifference toward Plaintiffs because of their race, let alone caused harm. Moreover, the Complaint's equal protection theory is legally deficient. Plaintiffs allege that M.T. was treated less favorably than "white players," but fail to identify any comparators who were similarly situated "*in all relevant respects*" and engaged in identical conduct. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007). The Eleventh Circuit strictly enforces the "similarly situated" requirement to prevent constitutionalizing every regulatory dispute. *Id.*

Yet, the Complaint does not identify any specific white student-athletes who engaged in conduct identical to M.T.'s and were treated differently. Instead, it

7

relies on generalized allegations of disparate treatment without factual support. This deficiency is fatal to their claims. *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (holding that an African–American nurse alleging that her hospital employer treated her differently from a similarly situated Caucasian nurse could not simply rely on broad generalities in identifying a comparator). Without concrete examples of similarly situated individuals and a showing of intentional, unjustified differential treatment, the claim cannot survive.

Plaintiffs' allegations, even when taken as true, do not rise to the level of a statutory or constitutional violation. Per the Report, the School Board had policies *prohibiting* discrimination and took affirmative steps to investigate and address complaints—including terminating both the head coach and assistant coach. These actions reflect a proactive response, not deliberate indifference.

The Complaint presents a narrative of perceived unfairness and racial tension, but fails to establish the denial of a legally protected educational opportunity or the existence of similarly situated comparators treated more favorably. Plaintiffs' reliance on broad accusations of racial bias and social exclusion—while serious—does not substitute for the rigorous comparator analysis required under the law. The School Board's documented efforts to address the situation—including staff terminations—further undermine any claim

of deliberate indifference or discriminatory intent. The absence of factual specificity renders the claim speculative and legally insufficient.

Plaintiffs' claims are built on speculation, conjecture, and legal conclusions—not facts. For these reasons, and for the same reasons their equal protection and Title VI claims fail, Plaintiffs' EEOA claim should be dismissed with prejudice.

### A. No Facts Alleged That the School Board Acted with Discriminatory Intent or Deliberate Indifference

Plaintiffs allege no operative facts against the School Board beyond its role as final policymaker. The Complaint concedes that the School Board investigated the allegations and took remedial action, including terminating the two baseball coaches. [Doc. 64, ¶¶21–23, 38, 44–45, 47–49, 60, 70].  Plaintiffs reference the School Board's Title VI Investigation Report of the FMHS Baseball Program ("Report") as "Exhibit A" but fail to attach it [*id.* at ¶¶38, 70].[3]

The Report, attached hereto as Exhibit 1, demonstrates that the School Board not only thoroughly investigated the allegations of discrimination—specifically addressing both the text message and walkout incidents—but also took decisive

---

[3] *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024)(a "court may properly consider document not referred to or attached to complaint under incorporation-by-reference doctrine if document is (1) central to plaintiff's claims and (2) undisputed, meaning that its authenticity is not challenged."); *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) (same).

remedial action by dismissing the coaches and cancelling the remainder of the baseball season for all players. The Report further confirms that the "division" among the team was not based on race [Ex. 1, pp. 5–6, 9], and explicitly states: "**The School Board of Lee County does <u>not</u> tolerate the usage of any version of the [n]-word and sees all versions as a violation of the non-discrimination policy 1.27 and Code of Conduct for Students**" [*id.* at 25]. These findings directly refute Plaintiffs' unsupported claims that the School Board condoned or tolerated discrimination.[4]

Plaintiffs' disagreement with the manner or outcome of the investigation does not establish bad faith, unfairness, or discrimination. *See Curlee v. Birmingham Bd. of Educ.*, 2013 WL 3357133, at *6 (N.D. Ala. June 28, 2013)("Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions,'" and the court will not make such a judgment in this case about whether the Board's policy is wise.")(*citing Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466 (11th Cir. 1991)). Plaintiffs' heavy reliance on the text message and walkout—despite prompt remedial action—cannot support a claim of intentional discrimination or deliberate indifference.

---

[4] *See Chadee v. Ocwen Loan Servicing, LLC*, 243 F. Supp. 3d 1283, 1288–89 (M.D. Fla. 2017) ("[W]hen allegations in a pleading conflict with the exhibits attached, the exhibits control.") (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009)).

10

**B**. **Plaintiffs Fail to Allege** *Monell* **Liability Under Section 1983**

Even if animus by staff were alleged, it is legally insufficient to impose liability on the School Board. A municipal body is only liable for its own violations of constitutional rights and is not vicariously liable for the actions of its employees. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). Plaintiffs identify no official policy, custom, or practice by the School Board that was motivated by race. The Report confirms the School Board had and enforced anti-discrimination policies. "It is only when the execution of a policy, not the violation of a policy, causes the injury that the government entity may be held liable." *Mouton v. Sch. Bd. of Collier Cnty.*, 2012 WL 3639004, at *3 (M.D. Fla. Aug. 23, 2012). Plaintiffs' threadbare allegations do not come close to meeting the *Monell* standard.

**C. Plaintiffs Fail to State an EEOA Claim Under 20 U.S.C. § 1703**

Plaintiffs' EEOA claim is equally baseless. They allege no facts establishing standing to bring individual EEOA claims or any denial of equal access to education. Plaintiffs do not allege deliberate segregation or a failure to remove vestiges of a dual school system, as required by 20 U.S.C. § 1703. *Freeman v. Pitts*, 503 U.S. 467, 496 (1992) (noting the causal link between current conditions and prior violations is attenuated if the district has acted in good faith).

11

Critically, the Complaint fails to identify any specific educational opportunity that was denied to M.T. To the contrary, the Complaint itself describes M.T. as the "star" player for the FMHS baseball team [Doc. 64, ¶4], underscoring his prominent role and access to athletic participation. The cancellation of the baseball season applied equally to all players and was not targeted at M.T. or any protected class. It was a team-wide consequence, not a discriminatory act, and therefore cannot plausibly support a claim of denial of equal educational opportunity.

The Complaint also attempts to frame the cancellation of the season and exclusion from booster club activities as discriminatory. However, these allegations lack the requisite nexus to an educational opportunity protected by law. There is no showing that M.T. was denied access to instruction, curriculum, or school-sponsored programs in a manner that implicates Title VI or the Equal Educational Opportunities Act.

## II.   PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS AGAINST THE INDIVIDUAL DEFENDANTS FOR RELIEF TO BE GRANTED

Plaintiffs all assert equal protection (Count III) and due process (Count IV) claims against the Superintendent (Christopher S. Bernier), Athletic Director (Stephan Cato), Principal (Robert Butz), former head baseball coach (Kyle Burchfield), JV baseball coach (Christopher Chapell), teacher and coach (Robert

Hinson), and former assistant baseball coach (Alex Carcioppolo), collectively and indistinctively, in both their official and individual capacities. While the Complaint spans 187 paragraphs, it fails to allege any operative facts demonstrating that any Defendant acted with discriminatory intent or violated clearly established law.

### A. Plaintiffs' Official Capacity Claims Are Duplicative

Counts III and IV should be dismissed as to the individual defendants in their official capacities because such claims are, in effect, claims against the School Board itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Plaintiffs do not allege that any individual defendant had final policymaking authority and thus fail to state a claim for relief against them in their official capacities.

### B. Plaintiffs Fail to State § 1983 Claims Against the Individual Defendants

Government officials are entitled to qualified immunity if they acted in good faith in carrying out their duties. *See Kentucky*, 473 U.S. at 166–67. To be held individually liable under § 1983, a defendant must be the decisionmaker whose actions caused the alleged constitutional violation. *See Kamensky v. Dean*, 148 F. App'x 878, 879 (11th Cir. 2005). This Plaintiffs can not do.

- **<u>Christopher S. Bernier</u>**: Plaintiffs' allegations against Bernier are wholly deficient and cannot support individual liability. The

Complaint merely identifies Bernier as Superintendent and vaguely asserts that Bernier "failed to intervene or challenge the unjust suspension" of M.T.—which was never imposed and within his discretionary authority. [Doc. 64, ¶¶ 48, 82, 121]. Plaintiffs do not allege any facts showing what, if anything, Bernier knew, when Bernier knew it, or how Bernier's conduct violated any clearly established constitutional right. Supervisory status alone is not a basis for § 1983 liability.

- **<u>Robert Butz:</u>** Plaintiffs do not allege facts showing that Butz acted with discriminatory intent or that any action was taken because of M.T.'s race, let alone his parents. [Doc. 64, ¶¶80, 119]. The alleged implementation and later rescission of the new Baseball Program Rules, as well as the cancellation of the season, were school management decisions within his discretionary authority that applied to all players—not targeted racial discrimination. It is impossible to imagine how removing Burchfield from his coaching duties is constitutionally actionable. If anything, by removing Burchfield for any alleged discriminatory act, FMHS demonstrated that it did not condone such behavior. Plaintiffs' attempt to recast this remedial action as evidence of discrimination is both illogical and unsupported by any operative facts.

- **<u>Stephan Cato:</u>** Plaintiffs' assertions that Cato had advance knowledge of the walkout, called law enforcement, or was present at meetings do not remotely establish discriminatory animus, let alone a constitutional violation. [Doc. 64, ¶¶71, 110]. In fact, contacting law enforcement demonstrates an effort to maintain order, not to

discriminate. *See Craig v. Selma City Sch. Bd.*, 801 F. Supp. 585, 596–97 (S.D. Ala. 1992). Plaintiffs' suggestion that Cato "approved" of M.T.'s suspension—which was later rescinded in direct response to parental complaints—reflects responsiveness (or privilege), not oppression or animus. Regardless, Cato's actions were within his discretionary authority. Supervisory liability cannot be based on inaction or a failure to police others unless there is a direct causal connection to a constitutional violation.

- **Robert Hinson:** Plaintiffs fail to allege that Hinson acted with discriminatory intent or that any action was taken because of M.T.'s race [Doc. 64, ¶¶76, 110]. The claims regarding fabricated misconduct, disciplinary decisions, and participation in the walkout are speculative at best and rest entirely on conjecture. Plaintiffs' assertion that Hinson had a constitutional duty to collect M.T.'s protective gear—an ordinary coaching courtesy—is patently meritless. There is no legal basis for transforming routine discretionary coaching decisions into constitutional violations. Plaintiffs offer no facts showing that any rule was selectively enforced, let alone enforced against M.T. because of his race.

- **Christopher Chapell:** Plaintiffs' asserts that Chapell "supported and enforced" the Baseball Program Rules, "refused to allow" discussions of racial tensions, and participated in planning the walkout [Doc. 64, ¶¶71, 110]. Even if accepted as true, these allegations do not establish discriminatory intent or a constitutional violation. Exhibit 1 confirms that the walkout was in protest of coaching changes—not because of Plaintiffs' race. Plaintiffs concede that Chapell was "responsible for

15

the administration and management of the baseball team," and all decisions attributed to him fall squarely within his discretionary authority. Routine coaching decisions—such as enforcing team rules, managing lineups, or attending meetings—are not actionable under § 1983 absent a showing of discriminatory animus.

- **Kyle Burchfield:** The allegations regarding discipline, enforcement of team rules, and alleged involvement in the walkout fail to establish discriminatory intent or a constitutional violation. Plaintiffs do not allege any direct causal connection between Burchfield's conduct and M.T.'s race. [Doc. 64, ¶¶72, 111]. Plaintiffs also fail to allege that Burchfield violated any clearly established law. All actions attributed to him—including discipline, rule enforcement, and lineup decisions—fall within the scope of discretionary school authority. Furthermore, any alleged conduct by Burchfield after his employment ended—including participation in the walkout—is not actionable under § 1983, which applies only to actions taken under color of state law. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

- **Alex Carcioppolo:** The isolated incident involving a mistakenly sent text message containing a racially charged term—while inappropriate—does not, standing alone, support a claim of intentional discrimination under § 1983. [Doc. 64, ¶¶74, 112]. Plaintiffs do not allege that the message was directed at M.T. or that it was sent with discriminatory intent. Courts have consistently held that isolated incidents, absent a pattern of discriminatory conduct or

a causal link to a constitutional injury, are insufficient to state a claim. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Carcioppolo acts within his discretionary authority when communicating with the team. Routine messaging—even if poorly worded—is not actionable under § 1983 unless it violates clearly established law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Any alleged conduct by Carcioppolo after his employment ended—including a "cryptic post" or participation in the walkout—is not actionable under § 1983, which applies only to actions taken under color of state law. *See Polk Cnty.*, 454 U.S. at 325.

To the extent Plaintiffs challenge certain Defendants' alleged failure to intervene, such claims are not actionable under § 1983 absent a direct causal connection to a constitutional violation. Mere inaction or passive presence at events—such as meetings or the walkout—does not establish liability. The Eleventh Circuit has made clear that supervisory liability under § 1983 requires either personal participation in the alleged constitutional violation or a causal link between the supervisor's actions and the violation. *See Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1266 (11th Cir. 2010).

At minimum, Plaintiffs' allegations amount to nothing more than dissatisfaction with discretionary coaching and team management decisions—not intentional discrimination. *See Ashcroft*, 556 U.S. at 678 (requiring factual allegations showing discriminatory intent); *Franklin v. Curry*, 738 F.3d 1246, 1249

17

(11th Cir. 2013) (e.g., dissatisfaction with management decisions does not state a constitutional violation). The Eleventh Circuit has repeatedly held that "different treatment of dissimilarly situated persons does not violate the equal protection clause." *See E & T Realty*, 830 F.2d at 1109. Plaintiffs fail to identify any similarly situated individuals who were treated more favorably because of their race, nor do they allege any facts showing that race was the motivating factor behind any decision.

As the Eleventh Circuit has cautioned, "retaliatory action is easy to allege and hard to disprove," and such claims must be supported by concrete facts—not conjecture. *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019). Plaintiffs offer no such facts here—only speculation, subjective grievance, and post hoc reasoning. Further, mere disagreement with school decisions—even if those decisions are unpopular or controversial—is not constitutionally actionable. *Franklin*, 738 F.3d at 1249. Plaintiffs' attempt to constitutionalize routine coaching decisions—such as discipline, lineup changes, or enforcement of team rules—is legally baseless and unsupported by precedent.

In short, Plaintiffs have failed to allege any facts that plausibly suggest intentional discrimination, a violation of clearly established law, or a constitutional injury. *See Elston*, 997 F.2d at 1406. Their threadbare and conclusory

18

assertions fall far short of the operative facts required to state a claim. Counts III and IV must be dismissed with prejudice.

### C. The Individual Defendants Are Entitled to Qualified Immunity

The individual Defendants are entitled to qualified immunity because all alleged conduct occurred within the scope of their discretionary duties, and Plaintiffs have failed to plausibly allege a violation of clearly established law. Qualified immunity protects government officials performing discretionary functions from liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1393 (11th Cir. 1993); *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988).

The burden first rests on the defendant to show that the challenged conduct occurred within the scope of discretionary authority. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). Once that is established, the burden shifts to Plaintiffs to show that the Defendants violated a clearly established constitutional right. *See Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003). The inquiry is not whether the act was proper, but whether it was within, or reasonably related to, the outer perimeter of the official's discretionary duties. *See James*, 157 F.3d at 1282.

As discussed *supa,* there is no dispute that each individual Defendant was acting within their discretionary duties—implementing team rules, managing

19

athletic programs, supervising students and staff, removing coaches, and attending meetings and school events. These are routine school functions, not constitutional violations. *See Craig*, 801 F. Supp. at 596–97 (monitoring and managing student conduct is a legitimate exercise of school authority).

Plaintiffs have not identified any clearly established law that was violated. Their claims rest on speculation, subjective grievances, and post hoc reasoning—not facts. *Ashcroft*, 556 U.S. at 678; *Franklin*, 738 F.3d at 1249. Supervisory or peer liability under § 1983 cannot be based on vague allegations or inaction; there must be a direct causal connection to a constitutional violation, which Plaintiffs have failed to allege. *See Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d at 1266; *Elston*, 997 F.2d at 1406.

Because Plaintiffs have failed to plead plausible operative facts showing entitlement to relief against any individual Defendant, and because all alleged conduct falls within the scope of discretionary authority, the individual Defendants are entitled to qualified immunity. All claims against them should be dismissed with prejudice.

### III.   PLAINTIFFS FAIL TO ALLEGE A DUE PROCESS VIOLATION

Plaintiffs' due process claim fails as a matter of law. There is no fundamental constitutional right to education—let alone to participation in extracurricular activities such as a full baseball season. *See San Antonio Indep. Sch. Dist. v.*

20

*Rodriguez*, 411 U.S. 1, 33 (1973). Accordingly, due process claims in this context are subject to rational basis review. *See Plyler v. Doe*, 457 U.S. 202, 220–21 (1982); *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985).

Plaintiffs offer no facts showing how the cancellation of the baseball season was procedurally or substantively unfair. They do not allege how notice was inadequate, how the decision departed from accepted norms, or how the process was constitutionally deficient. The cancellation applied equally to <u>all</u> players and was a discretionary school management decision—precisely the type of administrative action courts routinely uphold under rational basis scrutiny. *See Ewing*, 474 U.S. at 225 (noting that Courts may not override academic decisions unless they substantially depart from accepted norms). Plaintiffs' dissatisfaction with the outcome does not transform a lawful administrative decision into a constitutional violation.

## IV.   PLAINTIFFS' PENDENT STATE LAW CLAIMS

Plaintiffs' claims under the Florida Educational Equity Act (FEEA) (Count VIII) and Article IX, Section I of the Florida Constitution (Count X) fail for the same reasons their Title VI, EEOA, and Equal Protection claims fail: they are unsupported by facts, legally deficient, and rest entirely on speculation.

Plaintiffs do not allege that the School Board failed to "make adequate provision" for M.T.'s education as required by Article IX, Section I. The only

factual basis offered pertains to athletics—specifically, M.T.'s inability to complete the baseball season. This is not a denial of equal access to education. Courts have consistently held that participation in extracurricular activities, including sports, is not a constitutionally protected right. *See Plyler*, 457 U.S. at 220; *San Antonio Indep. Sch. Dist.*, 411 U.S. at 33. The cancellation of the season applied to all players and was a discretionary school management decision—not a constitutional or statutory violation.

Moreover, Plaintiffs Mom and Dad lack standing to bring individual claims under Article IX, Section I and the FEEA. Florida law is clear: the FEEA prohibits discrimination against a "student or an employee in the state system of public K-20 education." *See* Fla. Stat. § 1000.05(2)(a). Plaintiffs Mom and Dad are neither students nor employees and therefore cannot assert claims under these provisions.

Plaintiffs fail to allege any facts that plausibly suggest a denial of educational access, a violation of Florida law, or standing to assert these claims. Counts VIII and X should be dismissed with prejudice.

## V.   PLAINTIFFS' FAILURE TO AMEND THE REAL PARTY IN INTEREST VIOLATES RULE 17(a)(1)

Federal Rule of Civil Procedure 17(a)(1) mandates that "[a]n action must be prosecuted in the name of the real party in interest." When a minor reaches the age of majority, any legal representation assigned during their minority—such as a parent or guardian ad litem—automatically expires. *See Mason v. Royal Indem.*

22

*Co.*, 35 F. Supp. 477 (1940). Plaintiffs concede that in 2023, M.T. was a 16-year-old sophomore [Doc. 64, ¶27]. Logic and simple arithmetic dictate that two years later, M.T. is now past the age of majority. Yet, Plaintiffs have failed to amend their pleading to reflect this change, and M.T.'s parents continue to prosecute claims on his behalf without legal standing to do so.

This is not a minor oversight—it is a fundamental pleading defect. Rule 17(a)(1) is not optional, and Plaintiffs' continued failure to comply after multiple amendments demonstrates a disregard for basic procedural requirements. Courts routinely dismiss actions where the real party in interest is not properly named, particularly when the defect persists despite repeated opportunities to correct it.

Accordingly, Plaintiffs' failure to amend the Complaint to reflect M.T. as the real party in interest warrants dismissal of all claims asserted on his behalf. This defect alone is sufficient to justify dismissal with prejudice.

## CONCLUSION

Plaintiffs have had two years and three attempts to plead a viable Complaint. Yet, they continue to rely on speculation, vague innuendo, and conclusory assertions—without alleging any operative facts showing discriminatory animus, a violation of clearly established law, or a School Board policy or custom that caused them harm. Their claims are legally baseless,

23

factually unsupported, and procedurally defective. This Court should dismiss the Complaint in its entirety, with prejudice. Enough is enough.

Respectfully submitted,

*s/ Mikala A. Makar*

MIKALA A. MAKAR
Florida Bar No. 1025225
JAMES D. FOX
Florida Bar No. 689289
ROETZEL & ANDRESS, LPA
999 Vanderbilt Beach Rd., Suite 401
Naples, FL  34108
(239) 649-6200
mmakar@ralaw.com
serve.mmakar@ralaw.com
jfox@ralaw.com
serve.jfox@ralaw.com
*Attorneys for Defendants*

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Defendants certifies that she conferred with counsel for Plaintiffs, regarding this Motion. Plaintiffs' counsel was unable to agree in good faith to the relief sought.

*s/ Mikala A. Makar*
Mikala A. Makar

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2025 this document was electronically transmitted to the Clerk of Court via the CM/ECF system, which will send notice of electronic filing to all counsel of record.

_s/ Mikala A. Makar_
Mikala A. Makar