UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL TUCKER, et al.

*Plaintiffs,*

vs.

THE SCHOOL BOARD OF LEE
COUNTY, FLORIDA; et al.

*Defendants.*

_____

CASE NO. 2:24-cv-142

## **MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Defendants move to dismiss Plaintiffs' Third Amended Complaint [DE 73] under Rule 12(b)(6) and Rule 8(a)(2) of the Federal Rules of Civil Procedure as follows:

## **INTRODUCTION**

On November 7, 2025, Plaintiffs filed their <u>fourth</u> Complaint in a continued attempt to revive claims previously dismissed under Title VI, the Equal Protection and Due Process Clauses via 42 U.S.C. § 1983, the Equal Educational Opportunities Act (EEOA), the Florida Educational Equity Act (FEEA), and Article IX, Section I of the Florida Constitution. Despite repeated opportunities and explicit guidance from this Court, Plaintiffs again fail to identify any specific unlawful act attributable to any Defendant or provide a factual basis for their sweeping allegations.

The Complaint relies on conclusory assertions of collective discrimination unsupported by operative facts showing intentional discrimination, a violation of clearly established law, or any policy or custom linking the School Board to a constitutional violation. Plaintiffs broadly accuse the School District, the School Board, and seven individual employees—Christopher S. Bernier, Stephan Cato, Robert Butz, Kyle Burchfield, Christopher Chapell, Robert Hinson, and Alex Carcioppolo—of discrimination and retaliation based on race. Yet, the pleading offers no facts demonstrating discriminatory intent, unlawful conduct, or a School Board policy as the moving force behind any violation.

Plaintiffs' heavy reliance on a single, promptly addressed text message—even when combined with their other vague allegations—is wholly insufficient to establish that the School Board condoned discrimination or allowed it to permeate the FMHS community. To the contrary, Plaintiffs' own allegations confirm that staff were removed, policies enforced, and a thorough investigation conducted to ensure compliance with anti-discrimination standards.

Their attempt to recast enforcement of profanity rules—rules Plaintiffs themselves demanded—as racially motivated ignores Madrid's repeated violations and mischaracterizes equal enforcement as discriminatory. Dissatisfaction with discretionary school decisions does not create a constitutional claim. Likewise, Plaintiffs' assertion that canceling the baseball season denied

2

Madrid equal educational opportunities is illogical; the cancellation applied to all players, including Madrid, whom Plaintiffs acknowledge was the team's "star" player.

In short, Plaintiffs seek to transform routine disciplinary decisions and uniform enforcement of team rules into claims of racial discrimination through speculation and innuendo. The Complaint's 188 paragraphs are largely irrelevant, conclusory, and better suited to a press release than a pleading. Plaintiffs fail to allege facts permitting a reasonable inference of liability. Accordingly, the Complaint should be again dismissed—this time with prejudice.

## BACKGROUND

Plaintiffs Michael Tucker ("Dad") and Azuree'd Tucker ("Mom")[1] allege that their son, Madrid—an African-American former "star" student-athlete at Fort Myers High School ("FMHS")—was subjected to "race-based harassment" following a February 14, 2023 incident in which then-assistant coach Alex Carcioppolo mistakenly sent a text message containing a racial slur. [DE 73 ¶¶ 5, 20-21]. Carcioppolo immediately deleted the message and apologized. *Id.* The School Board responded swiftly and decisively, removing Carcioppolo from his coaching duties and later dismissing head coach Kyle Burchfield. [*Id.* ¶¶ 61,53].

---

[1] Defendants note that the Complaint fails to allege the race of Plaintiffs Michael and Azuree'd Tucker—a material fact necessary to support any claim of racial discrimination. For purposes of this Motion, Defendants will assume, without conceding, that Plaintiffs are African American.

Plaintiffs' own allegations show that school officials acted promptly and appropriately. [*Id.* ¶¶ 23-26,29-30,38-39,45-46,49-50, 61-62].

Although Plaintiffs did not complain about the text message and admit they had "nothing to do" with Carcioppolo's suspension [*id.* ¶¶ 21, 23], they now claim that months later staff, students, and parents orchestrated a "walkout" during a baseball game in "retaliation". [*Id.* ¶¶ 64-70]. But by Plaintiffs' own account—and as confirmed by investigative findings—the protest was not racially motivated; it was a misguided show of support for the removed coaches. [*Id.* ¶¶ 60, 63]. Plaintiffs' attempt to recast this protest as evidence of systemic racial animus is unsupported by facts and contradicted by the record.

The School Board's Title VI Investigation Report of the FMHS Baseball Program ("Report"), which Plaintiffs reference but fail to attach [*id.* ¶¶ 38–39, 71], demonstrates that the Board thoroughly investigated the allegations of discrimination, addressed both the text message and walkout incidents, and took decisive remedial action by dismissing the coaches and canceling the remainder of the baseball season for <u>all</u> players. The Report, attached hereto as Exhibit 1[2], confirms that the division among the team was not based on race and explicitly

---

[2] *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024)(a "court may properly consider document not referred to or attached to complaint under incorporation-by-reference doctrine if document is (1) central to plaintiff's claims and (2) undisputed, meaning that its authenticity is not challenged."); *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) (same).

states: "The School Board of Lee County does <u>not</u> tolerate the usage of any version of the [n]-word and sees all versions as a violation of the non-discrimination policy 1.27 and Code of Conduct for Students." [Ex. 1, p 31]. Importantly, the Report did not find a violation of Title VI nor any evidence of intentional discrimination. [Id. at 9].

Plaintiffs now take issue with the application of stricter enforcement of profanity rules against Madrid—rules they demanded be applied with zero tolerance—while ignoring his conduct and repeated violations. [DE 73 ¶¶ 26, 30, 40, 71; Ex. 1, pp. 14–16, 19–20]. Regardless, the more "severe discipline" Plaintiffs allege was never enforced. The "new rules" were revoked after Plaintiffs complained about their application to Madrid, with frustrations arising because Madrid was not held accountable for his actions—not because of his race. [DE 73 ¶¶ 40, 48–56; Ex. 1, pp. 29–30].

## STANDARD OF REVIEW

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the "factual allegations must be enough to raise a right to relief above the speculative level…." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations that are merely consistent

with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal marks omitted).

"A complaint may be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Reilly v. Herrera*, 622 F. App'x 832, 833 (11th Cir. 2015). Likewise, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## ARGUMENT

### I.   PLAINTIFFS' COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING (AGAIN)

Plaintiffs' Complaint should be dismissed—yet again—for failure to comply with Federal Rules of Civil Procedure 8(a) and 10(b). Despite multiple opportunities and clear guidance from this Court, [*see* DE 54, 57], Plaintiffs persist in filing an impermissible shotgun pleading. This is their fourth attempt, and the same defects condemned by this Court and the Eleventh Circuit remain— including those that warranted dismissal in *T.R., et al. v. The School Board of Lee*

6

*County, Florida*, et al. [3]  *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015).

Each count improperly incorporates all preceding allegations, combines multiple claims against multiple Defendants by multiple Plaintiffs, and fails to specify which Defendant caused which Plaintiff's alleged injury. This structural defect obscures the scope of liability and renders the pleading incoherent. Counts III and IV are asserted against all individual Defendants by all Plaintiffs, but fail to distinguish between claims brought in individual versus official capacities—each of which requires separate legal and factual analysis.[4]  Further, Counts I–II and V–X are asserted against both the School Board and the School District[5], despite repeated notice that the School District has no independent legal existence under Florida law.[6]

---

[3] *See T.R., et al. v. The School Board of Lee County, Florida,* et al., No. 24-cv-00321, Complaint [DE 1]; Sua Sponte Order Dismissing Complaint [DE 9]; Defendant's Motion to Dismiss Amended Complaint [DE 40]; Order Granting Motion to Dismiss in Part… [DE 56].

[4] As discussed *infra*, suits against government officials in their official capacities is in actuality a suit against the government entity (the School Board). School board officials in their individual capacities can raise qualified immunity as a defense.

[5] The School District's status as a Defendant has shifted repeatedly—named in the initial Complaint, omitted from the Amended Complaint, and then inexplicably reintroduced in the Second and Third Amended Complaints—further highlighting the disjointed and patchwork nature of Plaintiffs' pleadings.

[6] The School District has no independent legal existence under Florida law. *See Teets v. Hillsborough Cty. Sch. Bd.*, No. 8:15-cv-0094, 2016 WL 7115981, at *1 n.1 (M.D. Fla. Nov. 7, 2016); *Lee v. Pierre*, 9:19-CV-81631, 2020 WL 13847521, at *3 (S.D. Fla. Jan. 28, 2020); Fla. Stat. §§ 1001.40, 1001.41(4), 1001.32. Any claims against the "School District" are improper and duplicative, and the School Board remains the sole nominal defendant in this action.

Even Plaintiffs' attempts to separate claims fail and only compound the confusion. Count II incorporates Count I, Count IV does the same with Count III, and Count VI subsumes Count V. Count VII fails to articulate any distinct legal claim and merely duplicates Counts V and VI, offering nothing more than conclusions. This redundancy underscores the pleading's lack of clarity and contravenes the requirement for well-pleaded, non-duplicative claims.

This pattern of wholesale incorporation and cross-referencing renders it impossible to discern which Plaintiff asserts which claim against which Defendant on which facts, squarely violate the fair notice pleading standards designed to prevent this very form of shotgun pleading. *See Doscher v. Holding*, No. 22-13184, 2023 WL 6060559, at *1 (11th Cir. Sept. 18, 2023); *Iqbal*, 556 U.S. at 678.  By collapsing separate Plaintiffs and claims into overlapping and indistinguishable counts, Plaintiffs create a maze of cross-references and collective allegations, leaving both the Court and Defendants to speculate as to the actual scope and basis of each claim.

This fundamental defect alone warrants dismissal with prejudice. Plaintiffs' continued conflation of claims, parties, and legal theories—after four full attempts—prejudices Defendants and wastes judicial resources. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). Plaintiffs have had ample opportunity to correct these defects and have failed to do so.

## II.   PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS SUPPORTING SCHOOL BOARD LIABILITY

### A. No School Board Action

To impose liability under Title VI, Plaintiffs must allege that an "appropriate person"—an official with authority to address the alleged discrimination and institute corrective measures—had actual knowledge of the harassment and an opportunity to rectify any violation. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). Plaintiffs fail to meet this standard. They do not identify any adverse action by the School Board, nor any causal link between a protected activity and alleged harm.

Instead, Plaintiffs rely on broad assertions without attributing any specific act or omission to the Board. Their own allegations concede that the School Board investigated the matter and took remedial action, including terminating two baseball coaches—facts that undermine any claim of deliberate indifference. [DE 73 ¶¶ 21–23, 38, 44–45, 47–49, 60, 70; Ex. 1, pp. 2–3, 22, 31–33]. The Report further confirms that the division within the team was not race-based. [Ex. 1, pp. 5–6, 9]. These findings directly refute Plaintiffs' unsupported claims that the Board tolerated or endorsed discriminatory conduct.[7]

---

[7] *See Chadee v. Ocwen Loan Servicing, LLC*, 243 F. Supp. 3d 1283, 1288–89 (M.D. Fla. 2017) ("[W]hen allegations in a pleading conflict with the exhibits attached, the exhibits control.") (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009)).

Plaintiffs' disagreement with the investigation's outcome does not establish bad faith or discrimination. Federal courts do not sit as "super-personnel departments" second-guessing discretionary decisions. *Curlee v. Birmingham Bd. of Educ.*, 2013 WL 3357133, at *6 (N.D. Ala. June 28, 2013) (*citing Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466 (11th Cir. 1991)). Plaintiffs' reliance on a single text message and a walkout—both addressed promptly—cannot support a claim of intentional discrimination or deliberate indifference. *See Arrington v. Miami Dade Cnty. Pub. Sch. Dist.*, 835 Fed. Appx. 418, 422 (11th Cir. 2020) ("The various and seemingly unconnected instances of harassment Arrington experienced were not 'sufficiently widespread so as to put [the defendants] on notice of the need to act.'").

## B. Plaintiffs Fail to Allege *Monell* Liability Under Section 1983

Even if animus by staff were alleged, it is legally insufficient to impose liability on the School Board. Under *Monell*, a municipal entity cannot be held vicariously liable for employee actions; liability attaches only to the entity's own unconstitutional policies or customs. *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiffs identify no official policy, custom, or practice motivated by race. To the contrary, the Report confirms the opposite: the School Board maintained and enforced anti-discrimination policies. [Ex. 1, pp. 2-3].

"It is only when the execution of a policy, not the violation of a policy, causes the injury that the government entity may be held liable." *Mouton v. Sch.*

10

*Bd. of Collier Cnty.,* 2012 WL 3639004, at *3 (M.D. Fla. Aug. 23, 2012). Plaintiffs'

threadbare allegations fall far short of meeting the Monell standard.

**III.   PLAINTIFFS FAIL TO ALLEGE § 1983 LIABILITY AGAINST THE INDIVIDUAL DEFENDANTS, WHO ARE ENTITLED TO QUALIFIED IMMUNITY**

Plaintiffs assert equal protection (Count III) and due process (Count IV)

claims against seven individual defendants—Superintendent Bernier, Athletic

Director Cato, Principal Butz, Head Coach Burchfield, JV Coach Chapell,

Teacher/Coach Hinson, and Assistant Coach Carcioppolo—in both their official

and individual capacities. Despite spanning 188 paragraphs, the Complaint alleges

no operative facts showing that any individual acted with discriminatory intent,

violated clearly established law, or caused a constitutional injury.

**A. Official-Capacity Claims Are Duplicative and Should Be Dismissed**

Official-capacity claims are, as a matter of law, claims against the entity. *See*

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Busby v. City of Orlando*, 931 F.2d 764,

776 (11th Cir. 1991). Plaintiffs do not allege that any individual Defendant

possessed final policymaking authority. Counts III and IV should be dismissed as

to all individual Defendants in their official capacities.

**B. Plaintiffs Fail to State Individual-Capacity Claims Under § 1983**

To hold a government official liable under § 1983, Plaintiffs must plead facts

showing that each defendant, "through their own individual actions," caused a

11

constitutional violation with discriminatory intent and in contravention of clearly established law. *See Iqbal*, 556 U.S. at 676-78; *Kamensky v. Dean*, 148 F. App'x 878, 879 (11th Cir. 2005). Plaintiffs' allegations fall far short:

- **Superintendent Bernier**: Plaintiffs merely identify Bernier's role and vaguely claim he "failed to intervene" regarding a suspension that was never imposed. [DE 73 ¶¶ 48, 82, 121]. Supervisory status alone is not a basis for § 1983 liability; Plaintiffs allege no facts showing what Bernier knew, when he knew it, or how he violated clearly established rights.

- **Principal Butz:** No facts show discriminatory intent, racial targeting, or that any decision was taken "because of" Madrid's race. [DE 73 ¶¶ 80, 119]. Implementing and later rescinding team rules, and canceling the season, were discretionary management decisions applied to all players. Removing Burchfield for alleged misconduct demonstrates remedial action, not discrimination.

- **Athletic Director Cato:** Allegations that Cato had advance knowledge of the walkout or contacted law enforcement do not show discriminatory animus or a violation of clearly established rights. [DE 73 ¶¶ 71, 110]. Maintaining order and safety is within his discretionary authority. *See Craig v. Selma City Sch. Bd.*, 801 F. Supp. 585, 596–97 (S.D. Ala. 1992). Approval of a suspension later rescinded after parental complaint reflects responsiveness, not oppression. No affirmative causal connection is alleged.

- **Coach Hinson:** Plaintiffs plead no facts of discriminatory intent. Claims of "fabricated misconduct," discipline, or walkout participation fail to show actions taken because of race rather than conduct. [DE 73 ¶¶ 76, 110]. Routine coaching functions—collecting gear, enforcing rules—do not implicate clearly established constitutional rights.

- **Coach Chapell:** Allegations that Chapell "supported and enforced" team rules, declined to host on-field "racial tension" discussions, and participated in the walkout do not establish discriminatory purpose. [DE 73 ¶¶ 62, 71, 110]. Plaintiffs concede Chapell managed team administration; those decisions fall within discretionary authority. The walkout protested coaching changes, not Plaintiffs' race.

- **Coach Burchfield:** Discipline, rule enforcement, and coaching decisions do not, without facts of discriminatory intent, state a constitutional violation. [DE 73 ¶¶ 72, 111]. Actions after his employment ended (e.g., walkout) are not under color of state law and are not actionable under § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

- **Assistant Coach Carcioppolo:** An isolated, mistakenly sent text containing a racially charged term—while inappropriate—does not, standing alone, show intentional discrimination under § 1983, particularly where it was promptly deleted and apologized for. [DE 73 ¶¶ 74, 112]. Plaintiffs do not allege it was directed at Madrid or sent with discriminatory purpose. Routine team communications, even ill-phrased, are not actionable absent violation of clearly

13

established law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Isolated incidents without a causal link to a constitutional injury are insufficient. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Conduct after Carcioppolo's employment ended (e.g., "cryptic post," walkout) is similarly not actionable. *Polk Cnty.*, 454 U.S. at 325.

To the extent Plaintiffs allege "failure to intervene," such claims require a direct, affirmative causal connection to a constitutional violation, which is not pleaded. Mere supervisory inaction or presence is insufficient. *See Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1266 (11th Cir. 2010); *Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir. 1993). At most, Plaintiffs express dissatisfaction with discretionary coaching and management decisions—not intentional discrimination. *See Franklin v. Curry*, 738 F.3d 1246, 1249 (11th Cir. 2013) (dissatisfaction with management decisions does not state a constitutional violation).

## C. The Individual Defendants Are Entitled to Qualified Immunity

Qualified immunity shields officials performing discretionary functions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Fitzgerald*, 457 U.S. at 818; *see also Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1393 (11th Cir. 1993); *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988). The defendant must first show the

14

conduct occurred within discretionary authority; the burden then shifts to the plaintiff to show violation of a clearly established right. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).

"Clearly established" law cannot be defined at a high level of generality; it must be particularized to the case's facts. *White v. Pauly*, 580 U.S. 73, 79 (2017). Even where a general right exists, the question is whether the official's conduct was objectively reasonable in light of that right. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1283 (11th Cir. 2008). The inquiry is whether the acts were within, or reasonably related to, the outer perimeter of discretionary duties. *James*, 157 F.3d at 1282.

Here, each defendant's alleged conduct—implementing team rules, communicating with students, managing athletic programs, supervising students and staff, removing coaches, and attending meetings or events—falls squarely within discretionary school functions. (*See T.R., et al. v. The School Board of Lee County, Florida*, et al., No. 24-cv-00321, Order Granting Motion to Dismiss in Part [ECF 56].) These are routine, not constitutional violations. *See Craig*, 801 F. Supp. 585, at 596–97.

Plaintiffs identify no clearly established right particularized to these facts, nor any rule selectively enforced because of race. Their claims are speculative grievances and post hoc disagreement with school decisions, not facts

15

demonstrating discrimination. *See Franklin*, 738 F.3d at 1249. Elevating routine coaching decisions—discipline, lineups, enforcement of rules—into constitutional torts is unsupported by precedent.

In sum, Plaintiffs have not plausibly alleged (1) a constitutional violation by any individual defendant, or (2) the violation of clearly established law. Counts III and IV should be dismissed with prejudice.

## IV.   PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS OF A TITLE VI, EQUAL PROTECTION, OR EEOA VIOLATION

Plaintiffs' claims under Title VI, the Equal Protection Clause, and the EEOA are fatally deficient. Each requires well-pleaded facts—not speculation—showing intentional discrimination or deliberate indifference by each Defendant against each Plaintiff, and a direct causal link to the alleged harm. *See Elston*, 997 F.2d 1394, at 1405–06.

Mere offensive conduct is insufficient to establish a violation. "Title VII does not prohibit profanity alone, however profane." *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1301 (11th Cir. 2007). Isolated incidents or ambiguous statements are equally inadequate. *See In Banks v. Cypress Chase Condominium Association B, Inc.*, 616 F.Supp.3d 1316 (2022). Plaintiffs offer nothing more than speculation, group pleading, and conclusory assertions. *See Turner v. Williams*, 65 F.4th 564 (11th Cir. 2023) ("…conclusions, are not entitled to the assumption of truth.").

16

### A. No Facts Showing Intentional Racial Discrimination

The Complaint fails to allege a single fact showing that the School Board, its policymakers, or staff acted with discriminatory animus or deliberate indifference toward any Plaintiff because of race. Plaintiffs rely on broad phrases— "discriminatory practices" [DE 73 ¶ 2], "race-based harassment" (*id.* ¶¶ 5, 20, 121), "disparate application of the new rules" (*id.* ¶ 31)—but identify no concrete instance of intentional discrimination.

No facts demonstrate any act against Mom or Dad based on race. Social ostracism or exclusion from informal gatherings is insufficient to establish a constitutional violation. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650 (1999). "[R]emarks by non-decisionmakers or remarks unrelated to the decision making process itself are not direct evidence of discrimination." *Banks, 616 F. Supp. 3d at 1320.* Plaintiffs' subjective beliefs and assumptions are not enough [DE 73 ¶¶ 31, 52]. *See Bell v. Crowne Mgmt., LLC,* 844 F. Supp. 2d 1222, 1235 (S.D. Ala. 2012) (finding plaintiff's "subjective belief" that employers that written warning was race discrimination was insufficient to be indirect evidence of race discrimination). Such conclusory assertions cannot substitute for facts.

### B. No Equal Protection Comparator Facts

Plaintiffs' equal protection theory fails. Vague allegations that Madrid was treated "less favorably" than "white students" (*id.* ¶¶ 31–34, 110–118, 133–134) do

17

not identify any comparators similarly situated "in all relevant respects." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007). The Eleventh Circuit strictly enforces the "similarly situated" requirement to prevent constitutionalizing every regulatory dispute. *Id.* Plaintiffs name no specific white student-athletes who engaged in "identical" conduct and were treated differently. *Id.* This deficiency is fatal. *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (rejecting comparator claims based on broad generalities that an African–American nurse's employer treated her differently from a similarly situated Caucasian nurse).

Different treatment of dissimilarly situated persons does not violate equal protection. *E & T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987). As the Eleventh Circuit has cautioned, "retaliatory action is easy to allege and hard to disprove," thus such claims must be supported by concrete facts—not conjecture. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

Madrid was treated like every other player. Plaintiffs simply failed to anticipate that the rules they demanded would apply uniformly. [DE ¶¶ 73, 24–26, 40, 55; Ex. 1, pp. 22, 29–30]. That is equality, not discrimination.

### C. No Showing of Deliberate Indifference

Even taken as true, Plaintiffs' allegations do not rise to deliberate indifference. A school is deliberately indifferent only where its response to

harassment is "clearly unreasonable" in light of known circumstances. *Adams v. Demopolis City Sch.*, 80 F.4th 1259, 1270 (11th Cir. 2023) (citing *Davis*, 526 U.S. at 648, 119 S.Ct. 1661). The Complaint acknowledges that the School Board maintained anti-discrimination policies and took affirmative steps—including terminating both coaches. [DE 73 ¶¶ 23–24, 29, 39, 45, 48–50, 56, 61, 78, 117]. These actions demonstrate responsiveness, not indifference. "A school district is not deliberately indifferent simply because the measures it takes ultimately are ineffective." Adams, 80 F.4th at 1270.

### D. Plaintiffs Fail to State an EEOA Claim

Plaintiffs allege no facts establishing standing under the EEOA or any denial of equal access to education. Plaintiffs allege no facts establishing standing under the EEOA or any denial of equal access to education. *See Freeman v. Pitts*, 503 U.S. 467, 496 (1992). Plaintiffs identify no educational opportunity denied to Madrid. To the contrary, they admit he was the team's "star" player (DE 73 ¶ 5). Cancellation of the season applied equally to all players and does not plausibly support a denial-of-opportunity claim.

Attempts to frame rescinded rules, discipline, or booster club exclusion as discriminatory fail. Plaintiffs allege no facts showing denial of instruction, curriculum, or school-sponsored programs implicating Title VI or the EEOA. Their narrative of perceived unfairness cannot satisfy the rigorous pleading standards.

19

*See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) ("Title VII is not a civility code…").

In sum, Plaintiffs' 79-page Complaint is devoid of specific facts showing intentional discrimination "because of" race or deprivation of a legally protected right. Broad accusations and social grievances cannot substitute for operative facts. These claims must be dismissed with prejudice.

## V.   PLAINTIFFS FAIL TO ALLEGE A DEPRIVATION OF PROPERTY OR DUE PROCESS

Plaintiffs' due process claims (Count IV and VI) also fail as a matter of law. There is no constitutionally protected property interest in public education—much less in participation in extracurricular activities such as interscholastic athletics. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33 (1973); *McGhee v. Talladega City Bd. of Educ.*, No. 1:18-CV-1554, 2020 WL 6384428, at *7–8 (N.D. Ala. Oct. 30, 2020) ("The privilege of participating in interscholastic athletics … falls outside the protection of due process.").

### A. No Protected Property Interest

Plaintiffs identify no property interest recognized by law. Participation in a full baseball season is a privilege, not a right. Courts uniformly reject attempts to constitutionalize extracurricular activities. *See McGhee*, 2020 WL 6384428, at *7–8.

**B. No Procedural or Substantive Deficiency**

Plaintiffs allege no facts showing that the cancellation of the baseball season was procedurally or substantively unfair. There are no allegations of inadequate notice, deviation from accepted norms, or constitutionally deficient process. Discretionary school management decisions are precisely the type of administrative actions courts uphold under rational basis review. *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) (courts may not override academic decisions unless they substantially depart from accepted norms). Dissatisfaction with the outcome does not transform a lawful decision into a constitutional violation.

The Complaint itself demonstrates that Madrid and his parents received ample process: the "new rules" were communicated in advance, disciplinary actions were explained, and after parental complaint, Madrid's suspension was promptly reviewed and lifted pending investigation. This sequence—notice, explanation, opportunity to be heard— fully satisfies due process requirements. If anything, Madrid received more than the law requires: individualized attention, additional review, and accommodations not afforded to other students. His father, a former MLB player, actively advocated for him and influenced team decisions. These facts confirm fairness and responsiveness, not deprivation.

21

Plaintiffs fail to allege any facts plausibly suggesting a deprivation of a constitutionally protected property right or denial of due process. Courts consistently hold that participation in athletics falls outside due process protections. *See McGhe*e, 2020 WL 6384428, at *7–8. Counts IV and VI should be dismissed with prejudice.

## VI.   PLAINTIFFS' PENDENT STATE LAW CLAIMS

Plaintiffs' claims under the Florida Educational Equity Act (FEEA) (Count VIII) and Article IX, Section I of the Florida Constitution (Count X) fail for the same reasons as their Title VI, EEOA, and Equal Protection claims: they are unsupported by facts, legally deficient, and rest entirely on speculation.

### A. No Facts Showing Denial of Educational Access

Plaintiffs do not allege that the School Board failed to "make adequate provision" for Madrid's education as required by Article IX, Section I. Despite the Complaint's length, it never identifies what "education and educational opportunities" any Plaintiff actually lost. Counts VIII and X merely recite statutory elements and legal conclusions without factual support.

The only factual basis offered pertains to athletics—specifically, Madrid's inability to complete the baseball season. This is not a denial of equal access to education. Courts consistently hold that participation in sports is not a protected

22

educational right. *See McGhee*, 2020 WL 6384428, at *7–8 (finding no constitutional right to play high school basketball or receive an athletic scholarship).

## B. Parents Lack Standing

Mom and Dad lack standing to bring individual claims under Article IX, Section I and the FEEA. Florida law is clear: the FEEA prohibits discrimination against a "student or an employee in the state system of public K-20 education," neither of which Mom and Dad are. *See* Fla. Stat. § 1000.05(2)(a). Plaintiffs allege no facts showing that they fall within the statute's scope or suffered any legally cognizable injury.

Plaintiffs fail to allege any facts suggesting denial of educational access, violation of Florida law, or standing to assert these claims. Counts VIII and X should be dismissed with prejudice.

## VII.   COUNT VII IS DUPLICATIVE OF COUNTS V AND VI

Count VII, which asserts a general claim under 42 U.S.C. § 1983 against the School Board and District, is entirely duplicative of Counts V and VI. All three counts rest on the same alleged facts and legal theories—namely, that the School Board oversaw FMHS extracurricular and athletic programs that purportedly subjected Plaintiffs to disparate treatment and denial of equal protection in connection with school-sponsored events.

23

Count VII broadly incorporates prior allegations of disparate treatment and denial of equal protection and seeks the same relief as Counts V and VI. The factual allegations, legal standards, and requested damages are identical across these counts. *See Letidas Logistics, LLC v. Citibank, N.A.*, 789 F. Supp. 3d 1121, 1130 (S.D. Fla. 2025). Moreover, while all Plaintiffs seek damages under Count VII, the only alleged constitutional violation and resulting injury pertain to Madrid. Thus, Count VII merely repackages claims already asserted elsewhere, underscoring its duplicative nature.

## CONCLUSION

Plaintiffs have had two years and four opportunities to plead a viable Complaint. Yet they continue to rely on speculation, vague innuendo, and conclusory assertions—without alleging any operative facts showing discriminatory animus, violation of clearly established law, or a School Board policy or custom causing harm. Their claims are legally baseless, factually unsupported, and procedurally defective. Enough is enough. This Court should dismiss the Complaint in its entirety, with prejudice.

Respectfully submitted,

 s/ Mikala A. Makar_____

MIKALA A. MAKAR
Florida Bar No. 1025225
JAMES D. FOX
Florida Bar No. 689289
ROETZEL & ANDRESS, LPA

24

999 Vanderbilt Beach Rd., Suite 401
Naples, FL  34108
(239) 649-6200
mmakar@ralaw.com
serve.mmakar@ralaw.com
jfox@ralaw.com
serve.jfox@ralaw.com
*Attorneys for Defendants*

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Defendants certifies that she conferred with counsel for Plaintiffs, regarding this Motion. Plaintiffs' counsel was unable to agree in good faith to the relief sought.

<u> *s/ Mikala A. Makar* </u>
Mikala A. Makar

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2025 this document was electronically transmitted to the Clerk of Court via the CM/ECF system, which will send notice of electronic filing to all counsel of record.

<u> *s/ Mikala A. Makar* </u>
Mikala A. Makar